LILLIAN SANTIAGO, demandante y recurrente, *v.* KODAK CARIBBEAN, LTD., demandada y recurrida.

*Números:* RE-89-319
RE-89-278

*Resueltos:* 30 de enero de 1992

*Reinaldo Ramos Collazo*, abogado de la recurrente; *José Luis Verdiales Morales, José J. Santiago*, y *Carlos V.J. Dávila*, abogados de la recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

La Sra. Lillian Santiago presentó demanda contra la Kodak Caribbean, Ltd. (en adelante Kodak) alegando que fue despedida sin justa causa y en violación del Art. 5a de

la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7. Reclamó la compensación que provee la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a–185m, "reempleo a su posición anterior, paga atrasada y da[ñ]os emocionales y mentales ... por haber sido despedida ilegalmente y por haberse negado la demandada a reemplearla ...".(1)

Kodak contestó planteando como defensas afirmativas, entre otras, que el despido estuvo justificado dado el "ausentismo crónico de la demandante y su pobre actitud hac[i]a sus responsabilidades en el trabajo"; que la demandante no sufrió accidente del trabajo alguno, y que no cumplió con los requisitos del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*.

Así las cosas, Kodak presentó moción en la que solicitaba que se dictase sentencia sumaria, a la cual se opuso la demandante. El 27 de marzo de 1989 el foro de instancia dictó sentencia sumaria parcial mediante la cual desestimó la acción presentada al amparo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*. Con relación a la reclamación bajo la Ley Núm. 80, *supra*, resolvió que había una controversia de hecho y, por lo tanto, no procedía dictar sentencia sumaria.

Luego de una vista en su fondo, el 24 de abril de 1989, el tribunal de instancia dictó sentencia en la que determinó que el despido había sido injustificado. Concedió a la demandante "una cantidad igual a un mes de sueldo ($1,780.00) más una semana por cada año de trabajo (9 semanas) $4,005.00 en total la cantidad de $5,785.00, más la suma de $1,500.00 por concepto de honorarios de abogados".

---

(1) La demandante presentó inicialmente una demanda al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a–185m; luego enmendó e hizo la reclamación alegando violación al Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7.

De la sentencia sumaria parcial de 27 de marzo de 1989, recurrió ante nos la demandante Santiago alegando que el tribunal de instancia erró al dictar sentencia sumaria parcial cuando habían hechos relevantes y esenciales a la controversia que estaban claramente en disputa. La parte demandada Kodak, a su vez, solicitó la revisión de la sentencia dictada el 24 de abril de 1989. Cuestionó la apreciación de la prueba y la conclusión del foro de instancia de "que el ausentismo crónico y/o la incapacidad de la demandante para desempeñar su trabajo no es justa causa para su despido".

Expedimos los recursos y los consolidamos.

I

*Hechos pertinentes al caso Núm. RE–89–278*

El foro de instancia, en su sentencia sumaria parcial de 27 de marzo de 1989, hizo las siguientes determinaciones de hecho:

> La demandante Lillian Santiago, comenzó a trabajar para la demandada Kodak, sin tiempo determinado el 27 de octubre de 1975, en calidad de Secretaria de Publicidad. Posteriormente asumió varias posiciones en la empresa hasta que finalmente ocupó la posición de vendedora, luego de recibir un adiestramiento de once (11) semanas en la ciudad de Rochester, New York, durante los meses de junio a septiembre de 1984.
>
> Para el mes de abril, la demandante comenzó a ausentarse de su trabajo por encontrarse afectada emocionalmente. Surge de autos un certificado médico del Dr. Juan R. Díaz Troche, de 23 de abril de 1984, evidenciando su condición.
>
> Su condición emocional en esos momentos no le afectó para desempeñar sus funciones en dicho entrenamiento y le otorgaron el "Billy T. Files Award" por sus actuaciones y destrezas demostradas.
>
> El 19 de febrero de 1985 la demandante se ausentó de su trabajo.

La demandante llamaba periódicamente a su trabajo para indicar su estado de salud.

El 30 de mayo de 1985 fue despedida de su trabajo.

En la carta de despido no se le indicaba por qué se le estaba despidiendo.

El 4 de junio de 1985, luego de su despido, la demandante se reportó a las facilidades del Fondo del Seguro del Estado.(²) Fue evaluada psiqui[á]tr[i]camente por el Dr. Sampayo, quien el 2 de octubre la refirió al Programa de Rehabilitación Vocacional. El 12 de noviembre de 1986 la demandante fue dada de alta por el Fondo del Seguro del Estado. En esa misma fecha solicitó la reinstalación a su empleo en Kodak.

Antes de la carta de despido nunca se le indicó a la demandante o se le amonestó sobre sus ausencias.

## II

*El derecho de reserva y reinstalación en el empleo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo*

El presente caso nos permite resolver si el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, aplica a un empleado que ha sido despedido y luego reporta al Fondo del Seguro del Estado (en adelante Fondo) un accidente del trabajo ocurrido antes de dicho despido.

■ El Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, dispone lo siguiente:

En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, *el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo,* sujeto a las siguientes condiciones: (1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente; (2) que el obrero o empleado

---

(²) Por consejo de su abogado, la demandante acudió al Fondo del Seguro del Estado cuatro (4) días después de haber sido despedida.

esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero [o e]mpleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición).

Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32. (Énfasis suplido.)

■ Reiteradamente hemos resuelto que por ser la Ley de Compensaciones por Accidentes del Trabajo un estatuto remedial, debe de interpretarse liberalmente a favor del obrero. *Bruno Colón v. Comisión Industrial*, 109 D.P.R. 785 (1980); *Gallart, Admor. v. Comisión Industrial*, 87 D.P.R. 17 (1962); *Feliciano Figueroa v. Comisión Industrial*, 84 D.P.R. 196 (1961). Ahora bien, esto no significa que si "la ley es clara [y] libre de toda ambigüedad, la letra de ella ... deb[a] ser menospreciada bajo el pretexto de cumplir su espíritu". Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Véanse: *Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 53 (1984); *Cabán Méndez v. F.S.E.*, 115 D.P.R. 1, 3 (1983).

■ El Art. 5a, *supra*, establece dos (2) tipos de protección para el obrero que sufre un accidente del trabajo y se reporta y acoge a los beneficios que ofrece la Ley de Compensaciones por Accidentes del Trabajo. Primero, le impone al patrono el deber de reservarle al obrero, por doce (12) meses, el empleo en que se desempeñaba al momento de ocurrir el accidente. En segundo lugar, el trabajador tiene derecho a que lo repongan en ese mismo empleo una vez es

dado de alta por el Fondo, si solicita del patrono que lo repongan y si se dan las tres (3) condiciones establecidas en dicho artículo.[3]

■ Ahora bien, la protección que ofrece este artículo al obrero no es absoluta. "Puede darse el caso de que un patrono descubra que un trabajador que ya ha sufrido un accidente del trabajo llevó a cabo una conducta con anterioridad a sufrir dicho accidente que es causa justificada para despedirlo y en este caso el patrono obviamente no estaría obligado a reinstalar a su puesto a dicho trabajador, pudiéndolo despedir por esos actos anteriores y no estando impedido para ello por la prohibición de la ley. Lo que no puede hacer es despedirlo luego de sufrir el accidente o negarse a reinstalarlo en su empleo sin que haya justa causa para despedirlo." (Énfasis suprimido.) R.N. Delgado Zayas, *Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, Ramallo Bros. Printing, 1989, Cap. XI, pág. 189.

■ Una lectura concienzuda del Art. 5a, *supra*, y de la jurisprudencia interpretativa de la Ley de Compensaciones por Accidentes del Trabajo, nos convence de que el propósito de dicha disposición es proteger al obrero lesionado para que éste "no tenga que confrontarse, además, con la incertidumbre indeseable de que por haber sufrido dicho accidente, su patrono lo despida sin justa causa del empleo o que cuando éste regrese dado de alta no tenga trabajo". Delgado Zayas, *op. cit.*, pág. 189. Al imponerle al patrono el deber de reservarle a dicho obrero, por un periodo de doce (12) meses desde la fecha del accidente, *"el empleo que desempeñaba ... al momento de ocurrir el accidente"* —(énfasis suplido) 11 L.P.R.A. sec. 7— el legislador estableció un balance entre los intereses del obrero, o sea, la seguridad

---

[3] Véanse, también, las opiniones concurrentes de los Jueces Asociados Señores Rebollo López y Hernández Denton en *Sifontes v. Oliver Exterminating Services*, 128 D.P.R. 207 (1991).

económica que representa que al recuperarse del accidente pueda regresar a trabajar a su mismo empleo, y los del patrono de evitar la onerosidad de tener que reservar el empleo indefinidamente.

En opinión emitida el 12 de septiembre de 1990, el Procurador del Trabajo correctamente señala que "[l]a protección provista por el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo supone, a nuestro juicio, que el empleado se acoja a los beneficios de la ley vigente el vínculo obrero-patronal. Ello lleva implícito el deber de informar el accidente antes de la ruptura o terminación de dicho vínculo. Es de notarse que el deber de la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al menos durante doce (12) meses consecutivos (360 días) a partir de la fecha del accidente". Consulta Núm. 13310.

■ Por todo lo cual, resolvemos que el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra,* no aplica a un empleado que ha sido despedido y luego reporta al Fondo un accidente del trabajo ocurrido antes de dicho despido.

El foro de instancia actuó correctamente al desestimar la acción presentada al amparo del Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra.*

### III

*Hechos pertinentes al caso Núm. RE–89–319*

De los documentos que obran en autos surgen los hechos que a continuación relatamos.

La demandante Santiago comenzó a trabajar sin tiempo determinado con la demandada Kodak, el 13 de octubre de 1975. En deposición tomada el 11 de octubre de 1985 la demandante declaró que mientras estaba trabajando para

Kodak se enfermó con un problema emocional de *stress*, depresión, ansiedad e insomnio, y que el 19 de febrero de 1985 dicha "enfermedad llegó a un punto donde sencillamente yo no podía funcionar".(4) El 30 de mayo de 1985 fue despedida.

De los informes de asistencia sometidos con la moción de sentencia sumaria de 17 de febrero de 1989 de la demandada Kodak surge que del 1ro de enero al 30 de mayo de 1985, fecha en la cual la demandante fuedespedida, ésta había estado ausente de su trabajo cincuenta y dos días y medio (52 1/2), de los cuales cuarenta y siete días y medio (47 1/2) fueron de forma consecutiva. Los informes también reflejan que en los últimos trece (13) meses que la demandante trabajó para Kodak estuvo ausente un total de ochenta y tres (83) días.

En el Manual de Empleados de la Kodak Caribbean, Ltd., págs. 8–9, sometido en evidencia por la demandante, con relación a la asistencia de los empleados, se expresa lo siguiente:

ASISTENCIA

*Su primera y básica responsabilidad hacia la Compañía es asistir a su trabajo regularmente y a tiempo. Un récord de asistencia satisfactorio es uno de los requisitos de empleo en la Kodak Caribbean, Ltd.*

*Cuando un empleado no es puntual ni asiste regularmente a su trabajo, esto interrumpe el flujo de trabajo en su departamento y crea una carga adicional que recae sobre sus compañeros. Por lo tanto, su aumento anual en salario a base de mérito puede ser afectado por un récord pobre de asistencia.*

*La Compañía ha provisto protección para asegurar su ingreso en casos de ausencias necesarias. Sin embargo, la Compañía espera que usted haga uso de estas ausencias permitidas sólo cuando sean necesarias y justificadas.*

De vez en cuando todos nosotros necesitamos tiempo libre para atender asuntos que no pueden resolverse durante horas no laborables. Además, algunas veces surgen emergencias que requieren el que nos ausentemos del trabajo por períodos cortos

---

(4) Deposición, pág. 62.

de tiempo. Su supervisor debe ser avisado cuando estos casos ocurran y el tiempo perdido será considerado como tiempo libre aprobado sin paga. Sin embargo, si usted desea ser compensado, la Compañía le permitirá reponer el tiempo perdido trabajando horas extras.

Este arreglo debe ser discutido con su supervisor. Aquellos individuos que abusen de este privilegio no se les permitirá el que compensen por el tiempo perdido y también perjudicarán su evaluación anual.

Cuando un empleado esté ausente deberá notificarlo a su supervisor antes de la 10:00 A.M. Si su enfermedad, etc., no le permitiese regresar al trabajo por varios días, usted deberá mantener a su supervisor informado por lo menos una vez a la semana.

Se le entregará una tarjeta de asistencia al comenzar cada mes. Su supervisor anotará en esta tarjeta sus horas de llegada y salida además de los períodos de ausencia. Al final de cada quincena, el récord de su asistencia deberá ser firmado por usted y aprobado por su supervisor antes de ser enviado al Departamento de Personal. (Traducción nuestra y énfasis suplido.)

De otra parte, en cuanto a los beneficios que la Kodak concede al empleado si éste se ausenta por enfermedad, dicho Manual, págs. 13–14, dispone:

LICENCIA POR ENFERMEDAD

*La Compañía desarrolló la licencia por enfermedad para proteger a usted de pérdida de ingreso debido a ausencias resultantes de una enfermedad o accidente. Los beneficios de este plan están disponibles solamente cuando usted está enfermo.* Usted no es elegible para beneficios bajo este plan cuando usted falta debido a enfermedad de otros miembros de su familia.

Si un empleado falta al trabajo por una cita médica o dental, el tiempo que pierde de su trabajo se considerará como licencia por enfermedad. Usted deberá avisar a su supervisor inmediato antes de salir para tales citas.

*Si un empleado está ausente por más de tres días debido a una razón médica, deberá obtener una certificación médica antes de regresar a trabajar.*

*Si usted sufre un accidente o enfermedad que resulte en una incapacidad a corto plazo (menos de 130 días laborables consecutivos), usted podrá ser elegible para recibir compensación por "paga perdida" de un plan del gobierno (Fondo del Seguro del*

*Estado, Incapacidad No Ocupacional, etc.). Sin embargo, la Compañía comprende que esta compensación es solamente una ayuda mínima que no permitirá a usted cubrir todas sus obligaciones financieras durante su incapacidad. Por lo tanto, la Compañía pagará la diferencia entre su sueldo básico y los beneficios por incapacidad recibidos. Los beneficios máximos bajo este programa están basados en la licencia por enfermedad acumulada a base de los años de servicio del empleado en la Compañía.* Véase la Tabla de Licencia por Enfermedad que se provee más adelante.([5])

Después de agotada en un 100% su licencia por enfermedad, la Compañía continuará pagando la diferencia entre el 50% de su paga básica y los beneficios por incapacidad recibidos hasta una fecha equivalente a 130 días laborables desde la fecha en que comenzó su incapacidad. Se cualifica para los beneficios bajo el programa de continuar recibiendo el 50% del salario, si un individuo ha estado empleado un año antes de ocurrir la enfermedad o la incapacidad. Por lo tanto, empleados con menos de un año de servicio cualifican únicamente para los beneficios bajo el plan de 100% de compensación de licencia por enfermedad.

Como un nuevo empleado de Kodak Caribbean, Ltd., usted acumulará 1.25 días al mes por cada mes en el cual usted trabaje 120 horas hasta un máximo de 15 días laborables. Después de un año completo de servicio, usted tendrá derecho a compensación por ausencias debido a enfermedad por el tiempo que se indica abajo. Cuando expiren los 130 días laborables de ausencia continua, usted podrá ser elegible para los beneficios bajo el "Plan de Incapacidad a Largo Plazo". (Traducción nuestra y énfasis suplido.)

El foro de instancia, a su vez, hizo las siguientes determinaciones de hecho:

---

([5]) El Manual de Empleados de la Kodak Caribbean, Ltd. provee la siguiente tabla:

"TABLA POR LICENCIA DE ENFERMEDAD

| Años de Servicio | Compensación en Días Laborables | |
| --- | --- | --- |
| | 100% | 50% |
| 1 a años | 30 días | 100 días |
| 5 a 14 años | 60 días | 70 días |
| más de 15 años | 90 días | 40 días" |

1. El despido de la demandante se debió a las ausencias de ésta a través de los años en que trabajó para la parte demandada, particularmente durante los años 1984 y 1985.

2. Que antes de los años 1984, 1985, nunca le indicaron a la demandante que su ausentismo la podía afectar en su trabajo.

3. La demandante cumplió con las normas de la compañía relacionadas con las ausencias, las mismas estuvieron justificadas por enfermedad.

4. La demandante era una empleada sumamente competente, se le había reconocido su labor varias veces durante los años 1984 y 1985, inclusive obtuvo el premio "Billy T. Files Award".

5. La marcha ordenada y el normal funcionamiento de la parte demandada no se vió alterada por las ausencias de la demandante.

## IV

*El despido y la justa causa*

En Puerto Rico no existe una prohibición absoluta contra el despido de un empleado. Si existe justa causa éste puede ser despedido. El Art. 1 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185a, dispone un remedio económico —la indemnización— para el empleado que ha sido despedido sin justa causa. El Art. 2 (29 L.P.R.A. sec. 185b), por su parte, establece una serie de circunstancias o actos que pueden dar lugar al despido justificado, algunas imputables al empleado, otras al patrono o a la situación económica de la empresa. "Por otro lado, no hay ley alguna que le exija al patrono, que al despedir al empleado lo haga en una forma determinada, ni por escrito ni con un aviso previo. Tampoco nuestra legislación obliga al patrono a informarle al trabajador en el momento del despido ni luego de ello, las razones que tuvo para despedirlo, excepto para defenderse de una acción judicial." Delgado Zayas, *op. cit.*, pág. 123. Véase Art. 11 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185k.

El manual de una empresa que contiene las reglas y los reglamentos del trabajo y que establece las nor-

mas, los beneficios y los privilegios que disfrutará el empleado forman parte del contrato de trabajo. Como regla general, un patrón de incumplimiento de estas normas o reglas podría dar lugar a un despido justificado. Sin embargo, la ausencia de razonabilidad de estas normas podría convertir el despido en uno caprichoso o arbitrario y, por lo tanto, injustificado. De otra parte, los beneficios y privilegios allí establecidos constituyen derechos del empleado y un despido en violación a éstos también resultaría en un despido injustificado.

████ Al interpretar las disposiciones del Manual de Empleados de la Kodak Caribbean, Ltd., que forma parte del contrato de trabajo entre la demandante Santiago y Kodak, debe tenerse presente no sólo que sus cláusulas deben ser interpretadas "las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas", Art. 1237 del Código Civil, 31 L.P.R.A. sec. 3475, sino que, por ser éste un contrato típico de adhesión, en la preparación del cual el empleado no participó, las cláusulas obscuras o ambiguas deben ser interpretadas liberalmente a favor de éste, promoviendo así, hasta donde sea posible, la igualdad jurídica en materia de contratación. Art. 1240 del Código Civil, 31 L.P.R.A. sec. 3478; *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659, 662 (1986); *Herrera v. First National City Bank*, 103 D.P.R. 724, 727 (1975); *R.C. Leasing Corp. v. Williams Int. Ltd.*, 103 D.P.R. 163, 167 (1974); *Barreras v. Santana*, 87 D.P.R. 227231–233 (1963); J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jur. U.I.A., 1990, T. IV, Vol. II, Cap. III, pág. 95.

## V

*Aplicación de las normas de derecho a los hechos*

En su alegato, Kodak arguye que quedó establecido que el despido de la demandante Santiago "obedeció a su au-

sentismo crónico motivado por su incapacidad para realizar sus funciones debido a sus condiciones de salud y que durante su ausencia otro vendedor tenía que cubrir la ruta asignada a ella". Indica que la propia demandante "admitió haber incurrido en las ausencias reflejadas en las tarjetas de asistencia ... [agregando ésta] que las mismas estuvieron justificadas por razón de su enfermedad y que cumplió con el requisito de notificación establecido en el Manual de Empleados". (Énfasis suplido.) Continúa alegando que en dicho manual se establece "que un buen récord de asistencia es condición de trabajo en Kodak y que el ausentismo de empleados afecta la producción departamental e impone una carga adicional a los demás compañeros de trabajo". (Énfasis suprimido.) Arguye, también, que "[l]ógicamente, ello afecta la marcha ordenada y el normal funcionamiento de la empresa". (Énfasis suprimido.) Y que por razón de su incapacidad, la demandante incurrió en un patrón de ausentismos que "hizo que sus servicios fueran de poco o ningún valor para la empresa". (Énfasis suprimido.) De todo esto concluye que el despido no fue uno "por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". Art. 2 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185b. Finaliza su argumentación expresando que "la incapacidad de Santiago para desempeñar sus funciones desde febrero de 1985 hasta enero de 1986 es causa más que justificada para su separación". (Énfasis suprimido.) No le asiste la razón.

El Manual de Empleados de la Kodak Caribbean, Ltd., además de establecer las normas de asistencia a que alude la demandada Kodak, también contiene un plan específico sobre los beneficios a que tiene derecho un empleado cuando éste tiene que ausentarse debido a una *enfermedad o accidente*. Resulta obvio, pues, que las normas de asistencia han quedado atemperadas por los beneficios que con

respecto a ausencias por enfermedad o accidente, provee la empresa.

En dicho manual y en lo que respecta a los beneficios por ausencia por enfermedad o accidente, se dispone que si un empleado está ausente por más de tres (3) días por una razón médica, debe obtener una certificación médica antes de regresar. También establece un plan de pago compensatorio, dependiendo de los años de servicio, para aquellos empleados que se ven forzados a acogerse a licencia por enfermedad por un término de menos de ciento treinta (130) días laborables consecutivos. Esto lo denominan "incapacidad a corto plazo". Cuando la enfermedad del empleado sobrepasa este término, el empleado es elegible para los beneficios de lo que se denomina "Plan de Incapacidad a Largo Alcance".

Veamos cuáles fueron los hechos específicos en este caso. La demandante Santiago comenzó a ausentarse de su trabajo para el mes de abril de 1984. El 23 de abril de ese mismo año presentó un certificado médico del Dr. Juan R. Ríos Troche en el cual éste expresó que la demandante se encontraba en un estado físico y mental de sumo agotamiento y que le había "recomendado, para su restablecimiento emocional, que no esté sometida a situaciones que le generen ansiedad o 'stress' y que [debía] dejar de trabajar por un tiempo indefinido". Continuó ausentándose, por la misma razón, durante los meses de junio a septiembre de 1984. El 19 de febrero de 1985 la demandante nuevamente se ausentó de su trabajo por razón de enfermedad. Ésta, cumpliendo con lo dispuesto en el Manual, llamaba periódicamente a su trabajo para indicar su estado de salud. El foro de instancia resolvió como cuestión de hecho que la demandante Santiago cumplió con las normas de la Kodak sobre ausencia por razón de enfermedad.

Al momento de ser despedida, el 30 de mayo de 1985, la demandante Santiago se encontraba disfrutando de los beneficios que por razón de enfermedad, ya fuere ésta rela-

cionada o no con su trabajo, le ofrecía su contrato de trabajo.

La demandante fue despedida, precisamente, por estar disfrutando dichos beneficios. La demandada Kodak ni alegó ni probó que la demandante no cualificaba para los beneficios dispuestos en su propio manual de empleados para ausencias por razón de enfermedad. Un despido, por un supuesto "ausentismo crónico", bajo las circunstancias específicas de este caso, es uno injustificado. Los beneficios que provee el Manual de Empleados de la Kodak Caribbean, Ltd. están disponibles para todos aquellos empleados que están enfermos y así lo acrediten. Kodak no podía justificadamente despedir a la demandante Santiago por ella haberse acogido al plan de beneficios de "incapacidad a corto plazo" que provee el Manual de Empleados de la Kodak Caribbean, Ltd. Los errores señalados no se cometieron.

Por todo lo antes expuesto, *se dictará sentencia en la que se confirman la sentencia sumaria parcial dictada el 27 de marzo de 1989 y la sentencia de 24 de abril de 1989, dictada por el Tribunal Superior, Sala de Carolina.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López emitió opinión disidente.

– O –

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Nos vemos imposibilitados de suscribir y endosar la Opinión que en el día de hoy emite una mayoría de los integrantes del Tribunal en el presente caso.

La Opinión emitida, en abierta violación a la firme y reiterada norma jurisprudencial de que la Ley de Compen-

saciones por Accidentes del Trabajo debe de ser interpretada en forma liberal a favor del obrero o empleado, erróneamente coarta y restringe los derechos de éstos, beneficiando indebidamente a los patronos, a base de una interpretación restrictiva de dicha Ley.

Por otro lado, la Opinión mayoritaria es una que no sólo es jurídicamente incorrecta sino que contradictoria. A nuestro humilde entender, la misma no podrá tener otro efecto que no sea el de confundir totalmente a nuestros tribunales de instancia y a la clase profesional; situación que, en lugar de promover la simplificación de las controversias obrero-patronales, tendrá el efecto de aumentar, y complicar, considerablemente la actividad litigiosa en esta área del derecho a nivel de instancia.

Desafortunadamente, no hemos contado con el tiempo necesario para, en forma adecuada y específica, exponer por escrito los fundamentos en apoyo de lo antes aseverado. Quizás, en un futuro cercano, tendremos la oportunidad de así hacerlo. No podíamos, sin embargo, permanecer callados ante la grave injusticia cometida, contra la clase trabajadora en general y la litigante en particular, por la Opinión mayoritaria emitida en el presente caso.

— O —

## RESOLUCIÓN

San Juan, Puerto Rico, a 13 de mayo de 1992.

A la moción de reconsideración radicada por la parte demandante-recurrente, *no ha lugar*.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió opinión disidente en etapa de reconsideración. El Juez Aso-

ciado Señor Negrón García se inhibió. El Juez Asociado Señor Fuster Berlingeri no intervino.

(Fdo.) Francisco R. Agrait Lladó
*Secretario General*

**– O –**

Opinión disidente emitida, en etapa de reconsideración, por el Juez Asociado Señor Rebollo López.

El pasado 30 de enero de 1992 *disentimos* de la opinión emitida por una mayoría de los integrantes del Tribunal en el presente caso. Como expresáramos entonces, *dos* (2) son los *fundamentos* para el referido disenso. *En primer lugar*, a base de una interpretación restrictiva de la Ley de Compensaciones por Accidentes del Trabajo, *el Tribunal ha establecido una norma jurisprudencial incompleta que erróneamente coarta y restringe los derechos de los obreros y empleados en nuestra jurisdicción;* ello en abierta violación de la firme y reiterada doctrina judicial de que, por ser la referida Ley de Compensaciones un estatuto remedial, la misma debe de ser interpretada en forma liberal a favor de la clase trabajadora puertorriqueña. *En segundo término*, la mayoría del Tribunal, incomprensible y desafortunadamente, no se percata del hecho que dicha interpretación errónea y restrictiva causa que la norma jurisprudencial implantada resulte, en su aplicación, *no sólo injusta sino que contradictoria;* constituyendo el presente caso un claro ejemplo de ello.

Realmente no se requiere que una persona sea muy perspicaz para que pueda percatarse de la corrección de nuestros señalamientos. Tampoco resulta ser necesaria la lectura de complicadas y elaboradas decisiones judiciales; mucho menos, la consideración y estudio de escritos suscri-

tos por respetados miembros de la profesión legal. *Todo lo que se requiere es un análisis sereno y lógico de la situación fáctica ante la consideración del Tribunal.* Veamos.

I

Como es de todos conocido, el Art. 5a de la citada Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, en síntesis y en lo pertinente, le impone al patrono de un empleado que ha sufrido un accidente del trabajo la obligación de *"reservar"* por un (1) año el empleo que desempeñaba dicho obrero o empleado al momento de ocurrir el accidente y a *reinstalarlo* en el mismo, ello sujeto a la ocurrencia de *tres (3) condiciones o requisitos.* De darse estos tres (3) requisitos y el patrono no cumplir con su obligación de reinstalar al obrero o empleado, éste tendrá derecho a que el patrono le pague los salarios que él hubiera devengado de haber sido reinstalado y, en adición los daños y perjuicios que ello le hubiere ocasionado.([1])

---

[1] El Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, establece:

"En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones: (1) que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente; (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición; y (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero [o e]mpleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición).

"Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el

Conforme surge de la Opinión mayoritaria, de la que vehementemente discrepamos, se establece por este Tribunal la norma a los efectos de que "el Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo, *supra, no aplica* a un empleado *que ha sido despedido* [de su empleo] *y luego reporta* al Fondo [del Seguro del Estado] un accidente ... *ocurrido antes* de dicho despido". (Énfasis suplido.) Opinión mayoritaria, pág. 771.

La referida norma jurisprudencial, debemos confesar, tiene el *obvio y loable propósito* de evitar que un *empleado inescrupuloso*, luego de ser despedido, intente *aprovecharse indebidamente* de los beneficios que provee el antes citado Art. 5a de la Ley de Compensaciones, mediante la "creación o fabricación", *a posteriori*, de un inexistente accidente del trabajo. El fraude, no hay duda, *nunca* pudo formar parte del propósito del legislador al incorporar el citado Art. 5a a la Ley de Compensaciones por Accidentes del Trabajo.

*¿Por qué, entonces, nuestro disenso?* La razón es sencilla: *la norma establecida resulta ser errónea por cuanto la misma es incompleta;* esto es, *la norma establecida no requiere que el despido efectuado haya sido uno justificado.* Al así no exigirlo, dicha norma deja abierta la posibilidad de que un *patrono inescrupuloso* tome *indebida ventaja* de la misma *y pueda así burlar el propósito reparador del estatuto en controversia.*

Un sencillo ejemplo es todo lo que se requiere para poder uno percatarse de la corrección de lo antes señalado. Asumamos, a manera de ilustración, que un patrono, que había enviado a uno de sus empleados a realizar una diligencia, se entera por la vía telefónica que dicho empleado ha sufrido un grave accidente y que ha sido trasladado a un hospital en estado crítico. Consciente dicho patrono de

procedimiento para reclamación de salarios, establecido en las secs. 3118 a 3132 del Título 32."

las disposiciones del citado Art. 5a de la Ley de Compensaciones, y que el mismo le obliga a reservar el empleo a dicho empleado hasta un máximo de un (1) año, decide burlar las disposiciones del mismo despidiendo inmediatamente a su empleado. Al éste recuperarse, y en la primera oportunidad, reporta el accidente del trabajo al Fondo. Bajo la norma hoy establecida —la cual, repetimos, *no* exige que el despido sea justificado— el empleado *no* tendría derecho a los beneficios que provee el citado Art. 5a puesto que la citada disposición estatutaria —en palabras exactas del Tribunal— "no aplica a un empleado que ha sido despedido y luego reporta al Fondo un accidente ... ocurrido antes de dicho despido". Opinión mayoritaria, pág. 771.

*Pero, hay más. La norma establecida por el Tribunal, tal como reza la misma, se presta para que se cometa una injusticia como la que la demandada recurrida Kodak Caribbean, Ltd. cometió en el presente caso.*

Conforme surge de las determinaciones de hecho que hiciera el tribunal de instancia, determinaciones que este Tribunal adopta y hace suyas, la recurrente Santiago *efectiva y realmente* sufrió un accidente del trabajo —consistente el mismo de tensión (*stress*), depresión, ansiedad e insomnio— que la incapacitó para llevar a cabo su trabajo y que causó que ésta se ausentara del mismo; situación que plenamente justificó la empleada ante su patrono mediante el correspondiente certificado médico.([2])

*La referida empleada* —la cual, aceptadamente, era una extraordinariamente competente— *no se reportó al Fondo del Seguro del Estado en ese entonces por la obvia y transparente razón de que el así hacerlo era totalmente innecesario e improcedente*; ello en vista de las disposiciones per-

---

([2]) El hecho de que la empleada sufrió un "accidente del trabajo" *no* está en controversia. Aparte de que el tribunal de instancia así lo concluyó, debe recordarse que el Fondo del Seguro del Estado, luego del despido, así lo reconoció y le brindó tratamiento a la empleada para el mismo.

tinentes del Manual de Empleados de la Kodak —el cual formaba parte integrante de su contrato de trabajo— *disposiciones que le permitían disfrutar, con sueldo completo, de todo el período durante el cual ella estuvo ausente.* En relación al hecho de que el "accidente del trabajo" alegadamente no fue reportado "en tiempo" al Fondo del Seguro del Estado, *debe mantenerse presente que Kodak, como patrono, venía en la obligación de así hacerlo.* A esos efectos, véase 11 L.P.R.A. sec. 14.([3])

Por otro lado, procede que se enfatice el hecho de que, conforme inclusive se acepta en la Opinión mayoritaria emitida, *dicha empleada cumplió con todos y cada uno de los requisitos exigidos por el referido Manual de Empleados.* Ante esta clara situación de *cumplimiento estricto* de parte de la empleada, *y sin aviso o requerimiento de clase alguna,* su patrono la despide; *despido que el Tribunal, en su Opinión mayoritaria, determina que fue uno claramente injustificado.* Si ello es así, esto es, si el despido efectuado fue uno ilegal, *el mismo no puede tener consecuencia o efecto legal alguno.* Ahí, precisamente, radica lo erróneo y contradictorio de la norma establecida por el Tribunal en el presente caso: para que el despido *pueda privar* al empleado de los beneficios que concede el citado Art. 5a de la Ley de Compensaciones, *el mismo necesariamente tiene que ser uno legal y justificado.*

Habiendo la empleada en el presente caso, *efectiva y realmente,* sufrido un accidente del trabajo; habiendo dicha empleada cumplido con todos los requisitos y exigencias del Manual de Empleados de su patrono Kodak; habiendo dicho patrono incurrido en *la omisión del deber legal* que tenía de reportar al Fondo del Seguro del Estado el accidente del trabajo sufrido por su empleada; habiendo sido el

---

([3]) En adición, el hecho de que dicho accidente no se hubiera reportado "en tiempo" *no* tuvo consecuencia legal alguna. El Fondo, como hemos expresado anteriormente, le brindó a la empleada la protección de la Ley de Compensaciones por Accidentes del Trabajo.

despido efectuado uno ilegal e injustificado; *¿cómo es posible que se determine que la referida empleada no tiene derecho a los beneficios que provee el citado Art. 5a de la Ley de Compensaciones por Accidentes del Trabajo?* La contestación es sencilla: el resultado erróneo al que se llega *se debe al establecimiento de una norma incompleta y equivocada por parte de este Tribunal y su negativa, injustificada e incomprensible, de modificar y corregir la misma*, lo cual lo lleva a emitir una opinión contradictoria e injusta.

No tenemos duda alguna de que, al permanecer inalterada la norma establecida, la grave y lamentable injusticia que hoy se comete contra la recurrente Santiago desafortunadamente no será la última que se cometerá contra un miembro de la clase trabajadora de nuestro País. Los responsables de ello no serán los patronos inescrupulosos. En última instancia, la responsabilidad recae sobre los hombros de los integrantes de la mayoría de este Tribunal. *Rehusamos ser coautores de ello.*