Opinión disidente emitida por el
Juez Asociado Señor Fuster Berlingeri.
The Law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread.
Anatole France Premio Nobel de Literatura (1921)
Los hechos esenciales del caso de autos son sencillos. Un *746 empleado que llevaba trabajando 25 años en el hospital recurrido, se apropió de dos cajas de cervezas que pertenecían al mencionado patrono. Las dos cajas de cervezas habían estado almacenadas por un año en el cuarto de máquinas del hospital, un lugar muy caluroso y poco propicio para mantener su calidad. La razón por la cual se encontraban almacenadas allí era que el hospital tenía el evidente propósito de decomisarlas, es decir, que la gerencia del hospital las consideraba mercancía inservible. El propio empleado que se adueñó de las cervezas en cuestión no conocía si podían consumirse o si estaban dañadas. Dicho empleado era un obrero involucrado en actividades organizativas para la negociación colectiva. Por el acto de apropiación referido fue despedido de su empleo.
Mediante una sentencia, la mayoría del Tribunal convalida el despido referido. El decreto mayoritario le da gran peso a unas faltas del empleado cometidas hacía quince y diecinueve años atrás, incluso algunas de poca importancia como la de no haberse presentado a trabajar debidamente vestido con un uniforme. La mayoría evidentemente quiere proyectar la impresión de que se trata de una persona, en su juicio, menospreciable, para así intentar justificar la drástica sanción en cuestión. Lo que la mayoría no hace es darle el valor que merecen otros factores claramente pertinentes, que sirven de contrapeso a la decisión patronal de despedir al empleado en cuestión, tales como: (1) que el trabajador en cuestión tenía gran antigüedad en la empresa hospitalaria; (2) que las dos cajas de cerveza aludidas no sólo no tenían valor real alguno, sino que, para to-dos los efectos prácticos, se encontraban abandonadas por el hospital; (3) que el trabajador estaba activamente inmerso en actividades laborales protegidas constitucionalmente, que probablemente no eran del agrado del patrono. El análisis que la Mayoría hace de los hechos de este caso, pues, dista mucho de ser objetivo e imparcial. Tampoco es un análisis completo de todo lo que es pertinente.
A la luz de los tres factores medulares antes menciona *747 dos, que la Mayoría del Tribunal descarta totalmente, me parece claro que el despido del trabajador que aquí nos concierne fue una medida disciplinaria extrema, que no guarda proporción alguna con la falta cometida y que levanta al menos la sospecha de un posible discrimen sindical. Para sopesar la falta cometida en relación a la sanción que procede, es inevitable tener en mente la probabilidad de que el patrono aquí, que evidentemente no tenía ningún interés real en las cervezas dañadas, haya usado el acto imprudente de su empleado como excusa para despedirlo. Me parece innegable que ningún patrono de ordinario despide fulminantemente un empleado que lleva trabajando 25 años en la empresa por el hecho de que se haya apropiado de una mercancía inservible y abandonada. Mucho más probable es que el motivo real del despido sea para sustituirlo con un nuevo empleado de la misma categoría, que no sea un activista laboral y al que no haya que pagarle los salarios más altos acrecentados durante 25 años de servicio. Esa es una realidad sobre el modo de proceder de algunos patronos, que es muy bien conocida por los versados en los asuntos laborales. Si una mayoría de este Tribunal no la quiere reconocer aquí es porque su visión patronal de la realidad se lo impide.
Es cierto que el propósito real del despido no es un hecho que hubiese sido adjudicado aun cuando este caso llegó ante nos. Ello no nos permite repudiar totalmente el abuso patronal, como habría que hacerlo si constara concretamente ya la represalia aludida. Pero el propósito real del despido es un aspecto de este caso que podemos atisbar basándonos no sólo en la amplia experiencia que tenemos en estos asuntos, sino sobre todo derivado lógicamente de la evidente falta de razonabilidad del despido en cuestión, mediante el cual se impone la sanción más extrema por un acto que no constituyó daño material real alguno contra el patrono. Al ponderar qué sanción amerita la acción en cuestión del trabajador, me parece necesario tomar en cuenta la realidad completa del asunto ante nos, funda *748 mentados en la experiencia y la lógica, como lo hacen cotidianamente los tribunales en otras partes del mundo, y como lo hemos hecho nosotros mismos tantas veces. Véase B. Cardozo, The Nature of the Judicial Process, New Haven, Yale University Press, 1962. De cualquier modo, irrespectivamente del motivo del patrono, el hecho innegable y medular aquí es que se privó a un empleado de 25 años de servicio de su modo de ganarse la vida, sólo por haber cometido un acto imprudente, de muy poca monta material, si alguna.
En mi criterio, el modo de ganarse la vida de las personas y de sostener a su familia merece más protección que la que la mayoría de este Tribunal evidentemente está dispuesta a concederle. Se trata de una finalidad que ha sido reconocida como un derecho humano fundamental en el Art. 23 de la Declaración Universal de Derechos Humanos de las Naciones Unidas y por la reputada encíclica Láborem Exercens. Nuestra propia Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a—185m) lo reconoce, aunque con limitaciones. Véase Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992). Aun aquellos que a veces se comportan truhanamente merecen la protección aludida. Nuestra autoridad no puede estar siempre sólo a favor de lo institucional, del agraciado o del sano.
En resumen, entiendo que el empleado en cuestión debió ser sancionado por el incidente de las cervezas mediante alguna suspensión breve de empleo y sueldo, pero no con la sanción extrema de la destitución. Sencillamente, no creo que sea de modo alguno razonable que se prive a un trabajador del medio de ganarse la vida por haberse apropiado de una mercancía inservible y abandonada por el patrono. No hay proporción válida alguna entre la falta y la sanción. Si el patrono quería salir del obrero en cuestión, tenía que pagarle la mesada correspondiente que dispone la ley.
Es lamentable que una mayoría de este ilustre Foro es-time que sólo las personas perfectamente íntegras merecen su protección. Son visiones elitistas como ésta las que ins *749 piraron las palabras del gran Anatole France citadas al comienzo de esta opinión. Tal visión no sólo no encuentra eco alguno en la Carta de Derechos de nuestra Ley Fundamental, sino tampoco en ninguna de las teorías fundamentales que prevalecen en nuestros días sobre lo que es el Derecho y lo que es la justicia. Véase Edgar Bodenheimer, Treatise on Justice, Nueva York, Philosophical Library, 1967. Ciertamente no encuentra ningún apoyo en la Ley Núm. 80 citada antes. En ningún lugar de esa legislación, aun limitada como es, se dispone que sólo protege a los obreros que sean perfectamente íntegros.
La mayoría apadrina hoy una visión de la reglamentación obrero-patronal, que no sólo carece de toda fundamentación jurídica, sino que ominosamente puede propiciar graves desarrollos en las relaciones obrero-patronales y en la búsqueda de la paz laboral. Tal insólita visión tendría el inconmensurable efecto de convertir en desvalidos ante la ley o. la inmensa mayoría de los trabajadores que alguna vez han cometido una falta u otra. Tendría asimismo la incomprensible incongruencia de concedernos a los meros mortales, que somos los Jueces, la labor de sólo extender la protección de la ley a los seres perfectos.
Como no comparto ninguno de tales dislates ni la injusticia intrínseca del despido en este caso, yo disiento.