*1075 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Carvin School (en adelante la apelante), y nos solicita la revisión de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 16 de septiembre de 2002, notificada y archivada en autos el 12 de noviembre de 2002. Mediante la misma, el tribunal de instancia declaró Con Lugar la moción de sentencia sumaria presentada por la parte apelada María T. Laborde a la cual se unieron las apeladas Glorimar Pizarro Cañuelas, Migdalia Monge Cortés, Lorez Manon López y Rebecca V. Acevedo Pagán, enconsecuencia desestimando la demanda por incumplimiento de contrato y daños y perjuicios presentada en su contra por la parte apelante.
Luego de estudiado los hechos del presente caso, así como el derecho aplicable, REVOCAMOS la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.
I
Los hechos que dan inicio a la presente controversia son los siguientes. El 1 de agosto de 2000, la parte apelante otorgó junto con las aquí apeladas un contrato de trabajo para prestar servicios como maestras durante el año escolar 2000-2001.
Dicho contrato establecía, entre otras cosas, que las apeladas no renunciarían a sus plazas de maestras durante el año escolar, pero de hacerlo, debían notificarlo con treinta días de anticipación.
Luego de haber dado inicio el curso escolar, las maestras aquí apeladas Glorimar Pizarro Cañuelas, Migdalia Monge Cortés y Amparo Meltz Toro presentaron su renuncia a los puestos que ocupaban efectiva de forma inmediata.
Por ello, el 6 de septiembre de 2000, la parte aquí apelante presentó demanda sobre injunction preliminar y permanente, incumplimiento de contrato y daños y perjuicios en contra de las mencionadas maestras e incluyó además a la apelada Lorez Manon López.
Mediante la referida demanda, la parte apelante alegó que la renuncia había sido contrario a lo establecido en la cláusula decimocuarta del contrato la cual señalaba como condición a la renuncia que la misma debía ser notificada con treinta días de anticipación. Alegó además que dicha situación le había causado daños a la institución los que calculó en $75,000.00, ya que la dejó sin maestros que pudieran sustituirles afectando así de forma negativa el semestre escolar que ya estaba en curso.
El 11 de septiembre de 2000, la apelante presentó una segunda causa de acción idéntica a la anterior, pero en contra de la maestra María T. Laborde, quien alegadamente renunció a su plaza el 5 de septiembre de 2000, efectivo el 8 de septiembre de 2000, alegadamente violando también con ello la cláusula decimocuarta del contrato.
El 1 de noviembre de 2000, se presentó la misma reclamación contra la maestra Rebecca V. Acevedo, *1076 maestra de educación física que renunció a su plaza el 9 de octubre de 2000, efectivo el 15 de octubre de 2000.
Luego de las apeladas haber presentado sus respectivas contestaciones a la demanda negando, en síntesis, la ocurrencia de algún acto que significara incumplimiento de contrato, los casos fueron consolidados.
Posteriormente se celebró la vista de injunction preliminar, el cual fue declarado No Ha Lugar por el tribunal de instancia, continuando el caso por la vía ordinaria como una acción de incumplimiento de contrato y daños y perjuicios.
El 19 de junio de 2001, la co-apelada María T. Laborde presentó una moción de sentencia sumaria donde señaló que los daños alegados en la demanda eran hipotéticos y que afectarían derechos constitucionales de las demandadas. Alegó además que la parte apelante no había sufrido ningún daño porque había sustituido a las apeladas con otros maestros inmediatamente, no habiéndose por ello afectado el funcionamiento de la institución.
El 26 de junio de 2001, las co-apelada Glorimar Pizarro Cañuelas, Migdalia Monge y Lorez Manon López se unieron a la solicitud de sentencia sumaria .presentada por María T. Laborde e igual hizo posteriormente Rebecca V. Acevedo Pagan.
El 12 de septiembre de 2001, la apelante se opuso a la moción de sentencia sumaria y argumentó que en el presente caso existían cuestiones de hechos materiales los cuales estaban en controversia, por lo que no procedía disponer del caso por la vía sumaria.
El 20 de diciembre de 2001 y el 30 de enero de 2002, fueron celebradas ante el tribunal de instancia vistas argumentativas sobre la solicitud de sentencia sumaria. Allí las partes tuvieron la oportunidad de defender sus respectivas posiciones en cuanto a la procedencia de la misma.
El 12 de noviembre de 2002, el tribunal de instancia emitió sentencia sumaria y en consecuencia desestimó las demandas presentadas por la apelante en contra de las apeladas.
El tribunal de instancia fundamentó su determinación en el hecho de que el contrato pactado entre las partes era de adhesión y que la cláusula decimocuarta del mismo era contraria a lo establecido en el Art. II sec. 16 de la Constitución de Puerto Rico que establece que todo trabajador tiene derecho a escoger libremente su ocupación y renunciar a ella. El tribunal de instancia concluyó además que el término que señalaba la mencionada cláusula para anunciar la renuncia era excesivo y por lo tanto contrario al orden público.
En cuanto a la reclamación presentada contra Lorez Manon López, señaló que de los documentos surgía que ésta no presentó renuncia a su puesto, por lo que la demanda debió ser enmendada para atemperar los hallazgos del descubrimiento de prueba porque de las alegaciones de la demanda no surgía una causa de acción en su contra.
La apelante, inconforme con tal determinación, acude ante nos mediante apelación y nos señala la comisión del siguiente error por parte del Tribunal de Primera Instancia:

“Erró el Tribunal de Instancia al declarar con lugar una moción de sentencia sumaria a favor de la parte demandada-apelada e imponer honorarios de abogado a la parte apelante cuando de los hechos materiales esenciales en controversia y como cuestión de derecho procede que en todo caso se dicte sentencia sumaria a favor de la parte demandante-apelante. ”

Luego de esbozados los hechos pertinentes al caso ante nos, procedemos a exponer el derecho aplicable.
*1077 II
A. El mecanismo de sentencia sumaria
La sentencia sumaria es un mecanismo procesal, que procede cuando la parte promovente le demuestra al tribunal que no existe necesidad de que se celebre una vista evidenciaría del caso en su fondo. Mgmt. Ad. Serv. Corp. v. E.L.A.; Op. de 29 de noviembre de 2000, 2000 J.T.S. 189; Medina v. M.S. & D. Química P.R., Inc., 135 D.P.R. 716, 726 (1994). Solamente debe ser dictada una sentencia sumaria “en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. ” Benítez Esquilín v. Johnson & Johnson, Op. de 30 de septiembre de 2002,2002 JTS 137; PFZ Properties, Inc. v. General Accident Insurance Co., 136 D.P.R. 881, 911-912 (1994); Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, 117 D.P.R. 714, 720-721 (1986).
Reiteradamente, el Tribunal Supremo ha resuelto que la sentencia sumaria sólo debe concederse cuando no hay una genuina controversia sobre hechos materiales y el tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. Mgmt. Ad. Serv. Corp. v. E.L.A., supra; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997); Corp. Presiding Bishop CJC of LDS v. Purcell, supra. Esto es, cuando de los documentos no controvertidos que se acompañan con la moción, surge que no existe una legítima disputa de hecho que dirimir y tan sólo resta aplicar el derecho. Id.
El propósito de la moción de sentencia sumaria es “propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales; por lo tanto, no ameritan la celebración de un juicio en su fondo. ” Santiago Rivera v. Ríos Alonso, Op. de 7 de febrero de 2002, 2002 J.T.S. 21; Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 632 (1994). Además, se ha señalado que el fin de la sentencia sumaria es aligerar la tramitación de un caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de documentos no controvertidos surge que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. PFZ Properties, Inc. v. General Accident Insurance Co., supra; Caquías v. Asoc. Res. Mansiones Río Piedras, 134 D.P.R. 181,(1993); Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, supra, a la pág. 720
La Regla 36.3 de la Reglas de Procedimiento civil, 32 L.P.R.A. Ap. III, R. 36.3, establece que se podrá dictar sentencia sumaria “si las alegaciones,... [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostrasen que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia, sumaria ... Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. ” PFZ Properties, Inc. v. General Accident Insurance Co., supra, a la pág. 911; Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, supra, a las págs. 719-720.
Mediante dicho mecanismo procesal se pretende obtener un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia sobre hechos materiales del litigio. Véase: Revlon Realistic, Inc. v. Las Américas Trust Company, 135 D.P.R. 363, 376 (1994); Rivera et. al. v. Superior Pkg., Inc. et. al., 132 D.P.R. 115, 133 (1992); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987). Pero el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal: alcanzar una solución justa. Santiago Rivera v. Ríos Alonso, supra; PFZ Properties, Inc. v. General Accident Insurance Co., supra; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
Al dictar sentencia sumaria, el tribunal: (i) analizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquéllos que obran en el expediente del Tribunal...; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. PFZ Properties, Inc. v. General Accident Insurance Co., supra, a la pág. 913.
*1078 Un Tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede, Rivera Báez v. Jaime Andujar, Op. de 28 de junio de 2002, 2002 J.T.S. 107; PFZ Properties, Inc. v. General Accident Insurance Co., supra, alas págs. 913-914; Corp. Presiding Bishop C.J.C. of L.D.S. v. Purcell, supra, págs. 722-723; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 280 (1990).
B. Los contratos y su interpretación
Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Art. 1206, Código Civil, 31 L.P.R.A. sec. 3371. Amador Parrilla v. Concilio Iglesia Universal, opinión de 23 de marzo de 2000, 2000 J.T.S. 60, pág. 877. Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391; Díaz Ayala v. E.L.A., opinión de 30 de marzo de 2001, 2001 J.T.S. 49, pág. 1066. Una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Artículo 1230 de Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3451. El consentimiento, se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, 31 L.P.R.A. seec. 3401; Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
Los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los mismos. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Art. 1210, Código Civil, 31 L.P. R.A. sec. 3375.
Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes, por lo que se debe cumplir con lo expresamente pactado. Artículo 1044 del Código Civil, 31 L.P.R.A. sec. 2994. Por tanto, los tribunales de justicia no pueden relevar a una parte de cumplir con lo que se obligó a hacer mediante contrato, cuando dicho contrato es legal y válido y no contiene vicio alguno. Id. De Jesús González v. Autoridad de Carreteras, opinión de 30 de abril de 1999, 99 J.T.S. 72, pág. 998; Mercado, Quilinchini v. U.C.P.R., 143 D.P.R. 610, 627 (1997); Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Olazábal v. U.S. Fidelity, ect., 103 D.P.R. 448, 462 (1975).
En Puerto Rico rige el principio de la libertad de contratación, por lo que las partes contratantes pueden convenir los pactos, cláusulas y condiciones que tengan por conveniente, siempre que los mismos no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207, Código Civil, 31 L.P.R.A. sec. 3372. Véase además: Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, Opinión de 23 de marzo de 2000, 2000 J.T.S. 60; Luán Investment Corp. v. Rexach Construction Co. Inc, Opinión de 8 de diciembre de 2000, 2000 J.T.S. 196; Trinidad García v. Chade, Opinión de 18 de enero de 2001, 2001 J.T.S 10; Unisys v. Ramallo Brother, 128 D.P.R. 842, 850-851 (1991); Morales v. Municipio de Toa Baja, 119 D.P.R. 682, 684-685 (1987); Reyes v. Jusino, 116 D.P.R. 275, 287 (1985). Es bajo este principio que todo contrato que sea contrario a las leyes, la moral y el orden público es nulo e inexistente. Véase: De Jesús González v. Autoridad de Carreteras, supra, pág. 994.
De conformidad con el principio rector de pacta sunt servanda, las partes contratantes se obligan a todos los extremos de lo pactado que sean conformes a la ley, a la moral y al orden público. Por otro lado, la atadura o vínculo contractual tiene sus límites en la voluntad expresa de las partes y, claro está, en todo aquello que sea derivado de las expectativas razonables de lo que la buena fe dicta respecto a la relación contractual. Paine Webber Incorporated of P.R. v. Service Concepts, Inc., Opinión de 13 de junio de 2000, 2000 J.T.S 100.
*1079 < En el ámbito de las obligaciones y contratos, es doctrina fundamental .que cuando los términos- de un ‘ , contrato son claros, y no dejan lugar a dudas sobre la intencíón de Jos contratantes,, no. cabe recurrir.a reglas de ; interpretación. Art,. 1233 del. Código. Civil,-31 LíP.íLA. see. 3471; Trinidad García v. Chade; opinión de 18 de enero de 2001, 2001 J.T.S. 10, pág.:-792; Marcial Burgos v. Tomé, 144 D.P.R. 522, 536 (1997). Es pór ello que la facultad judicial extraordinaria de intervenir con la autonomía'contractual mediante el .ejercicio de su función moderadora, debe ejercerse con extrema cautela y patente justificación. Marcial Burgos v. Tomé, supra, pág. 536; López de-Victoriav..Rodríguez, 113 D.P.R. 265,271 (1982). •..■••.■
Por otro lado, un contrato de adhesión fes aquél en que una sok de las partes dicta las. condiciones del contrato. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Zequeira v. CRUV, 83 D.P.R. 878. (1961). Este es un contrato donde la intervención de una de las partes contratantes consiste en una mera conformidad de ? un documento redactado unilateralmente por la otra parte. Maryland Casualty v. San Juan Racing, 83 D.P.R. 559 (1961).
En un contrato de adhesión, la parte económicamente más débil acepta o rechaza sus cláusulas quedando costreñido al mínimo su supuesta libertad para contratar. El Código Civil contrarresta esta desigualdad en la contratación preceptuando en el Artículo 1240, 31 L.P.R.A. sec 3478 que; “La interpretación de las cláusulas oscuras de un contrato no debería favorecer a la parte que hubiese ocasionado la oscuridad”. González v. Coop. de Seguros de Vida de P.R., 117 D.P.R. 659 (1986).
Si bien la adhesión no es por sí una declaración de nulidad, es por lo menos, una norma de interpretación de contrato que por la reducción a un mínimo de la bilateralidad, obliga al que lo interpreta a no favorecer a la parte que estuvo en posición de imponer la mayor cantidad de condiciones onerosas que demuestra el contratoCRUV v. Peña Ubiles, 95 D.P.R. 311 (1967). Aunque se ha reconocido que un contrato de empleo es un contrato de adhesión, ya que en su preparación el empleado no, .participó, das cláusulas oscuras o ambiguas deben ser interpretadas liberalmente a favor de éste, promoviendo así la igualdad jurídica en materia de contratación. Santiago v. Kodak Caribbean, Ltd, 129 D.P.R. 763 (1992).
■ Los daños y perjuicios de que responde el deudor de buena fe son los previstos o que se hayan podido prever al tiempo de constituirse la obligación y que son consecuencia necesaria de su falta de cumplimiento. En caso de dolo, responderá el deudor de todos los que conocidamente se deriven de la falta de cumplimiento de la obligación. Artículo 1060 del Código Civil, 31 L.P.R.A. sec. 3024. La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso en que uno de los obligados no cumpliere lo que le incumbe. El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible. Artículo 1077 del Código Civil, 31 L.P.R.A. sec. 3052.
Expuesto el derecho aplicable, procedemos a resolver.
ra
En el caso de autos, el tribunal de instancia resolvió el caso por la vía sumaria bajo el fundamento de que no existía ningún hecho en controversia que ameritara la celebración de una vista en su fondo y que por lo tanto ■■ sólo restaba aplicar el derecho.
El tribunal de instancia resolvió entonces que el contrato de empleo celebrado entre la parte apelante y las . apeladas era un contrato de adhesión el cual había que interpretar a favor de estas últimas. En consecuencia, determinó que la cláusula decimocuarta del contrato la cual establecía la prohibición a las apeladas de renunciar ; a sus plazas y acto seguido le ponía como condición el notificar la renuncia con treinta días de anticipación, era ■ inconstitucional por un lado y en contra del orden público por el otro, lo cual anulaba la misma.
*1080 Estamos de acuerdo con el foro sentenciador que estamos ante un contrato de adhesión donde una de las partes, en este caso la apelante, estaba en ventaja ante el otro, en este caso las apeladas, por haber redactado unilateralmente el contrato. Por lo tanto, estamos de acuerdo que el mismo debe ser interpretado a favor de la parte apelada; no obstante, no estamos de acuerdo en la interpretación que hace el tribunal de instancia del mismo en consecuencia desestimando la acción por vía la vía sumaria. Aunque la enmienda decimocuarta del contrato en controversia en efecto prohíbe el que las apeladas renuncien a sus puestos, acto seguido impone un término de treinta días para presentar la renuncia, por lo que, en realidad, no estamos ante una prohibición, sino ante una condición. Nos parece que dicho término de treinta días, contrario a lo que expresara el tribunal de instancia, es un término razonablemente corto, considerando la naturaleza del empleo que ocupaban las apeladas.
Estudiado el expediente ante nos, no podemos estar de acuerdo con el tribunal de instancia que en el caso de autos no existían controversias que ameritaran la celebración de una vista en los méritos. Entre los hechos que están en controversia y por los cuales entendemos debe celebrarse una vista en los méritos están los siguientes: (1) si la apelante se quedó desprovista de maestros que impartieran las clases que daban las apeladas o si por el contrario pudieron ser sustituidas; (2) si la demandante contrató a los maestros que sustituirían a las apeladas en un término razonable; (3) si la renuncia de las apeladas en efecto causó daño a la apelante; (4) si la co-apelada Lorez Manon fue despedida del trabajo como alegó o, por el contrario, abandonó su plaza sin notificarlo.
Por haber hechos en controversia los cuales ameritan que se celebre una vista en su fondo, no procedía la desestimación de la demanda por la vía sumaria, por lo que erró el tribunal de instancia al así hacerlo.
IV
Por los fundamentos anteriormente expuestos, REVOCAMOS la sentencia apelada y devolvemos el caso al foro de instancia para la celebración del juicio en su fondo.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General