Rodríguez García, Juez Ponente
*832 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante este Foro, Jesús Sánchez Santana (Sánchez), mediante recurso de apelación, presentado en 9 de octubre de 2002. Este nos solicita la revisión y revocación de una sentencia emitida en 29 de agosto de 2002 y notificada en 9 de septiembre del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Humacao, en el caso número HPE2001-0021.
Mediante la referida sentencia, el Tribunal de Primera Instancia declaró no ha lugar la demanda que genera el presente recurso, por Discrimen por Razón de Edad y/o Despido Constructivo.
Examinado el expediente ante nuestra consideración, así como la transcripción del juicio en su fondo, y por los fundamentos que exponemos a continuación, se CONFIRMA la sentencia apelada.
I. Trasfondo fáctico y procesal
Sánchez presentó Querella por Discrimen por Razón de Edad (Ley 100) y Despido Constructivo contra la parte apelada, Milrod Entreprises, Inc. (Milrod), en 20 de febrero de 2001, acogiéndose al procedimiento de carácter sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada. (Apelación, Apéndice págs. 1-3)
Milrod fue emplazada en 15 de marzo de 2001, mediante la recepcionista, Carmen Meléndez, y presentó su contestación a la demanda en 23 de marzo de 2001, en la cual negó que Sánchez tuviese derecho a compensación alguna. (Apelación, Apéndice págs. 4-5 y 6-13, respectivamente)
En 24 de abril de 2001, Sánchez envió a Milrod un interrogatorio, el cual fue contestado en 22 de junio de 2001, luego de solicitada una prórroga y ser concedida por el Tribunal. (Apelación, Apéndice págs. 14-24 y 25-39, respectivamente)
Posteriormente, en 24 de enero de 2002, las partes suscribieron el Informe Sobre Conferencia Preliminar de Casos Civiles entre Abogados, aprobado por el foro de instancia como el acta que regiría los procedimientos del caso. (Apelación, Apéndice págs. 40-61) En dicho informe, y según fuera incorporado en la sentencia apelada, se formularon las siguientes estipulaciones de hechos:

“1) La querellada es una corporación organizada y autorizada a hacer negocios en el Estado Libre Asociado de Puerto Rico, dedicada a la venta de zapatos.

2) El querellante trabajó para la querellada, en la tienda Almacenes Rodríguez, desde el 26 de abril de 1978 hasta el 3 de agosto de 2000, cuando el querellante renunció.

3) Desde julio de 1998 hasta el 8 de noviembre de 1998, el querellante trabajó a tiempo completo en la tienda localizada en el centro comercial Palma Real en Humacao.

4) Mediante carta con fecha de 4 de noviembre de 1998, la querellada notificó al querellante que, efectivo 
*833
el 9 de noviembre de ese año, se reportara a la tienda de Caguas debido a la “merma substancial en ventas” de la tienda de Palma Real, o, en la alternativa, se le brindó la oportunidad de permanecer en la tienda de Palma Real, pero con una jomada de trabajo de veinte (20) horas.

5) El querellante optó por permanecer en la tienda localizada en el centro comercial Palma Real.

6) El querellante presentó su renuncia el 3 de agosto de 2000.

7) Para noviembre de 1998, el querellante contaba con 43 años de edad y al momento de su renuncia tenía 45 años.

8) El querellante, mientras trabajó para la querellada a tiempo completo, devengó un salario mensual de $892.66 y contaba además con beneficios como vacaciones, días por enfermedad, comisiones y un seguro de vida (el cual el querellante desconoce en qué estado se encontraba al momento de su renuncia)

9) Milrod operaba y tenía abierta al público tres (3) tiendas para la venta de calzado de mujer, hombre y niños en el pueblo de Humacao.

10) La más antigua de las tres (3) tiendas era la que estaba localizada cerca de la plaza de recreo del pueblo de Humacao, la segunda tienda más antigua era una que estaba localizada en el centro comercial llamado Humacao Plaza y la tercera tienda es la que aún permanece operando en el centro comercial conocido con el nombre de Palma Real, también en el pueblo de Humacao.

11) Debido a una reducción o merma sustancial en las ventas de estas tres (3) tiendas localizadas en el pueblo de Humacao, en el mes de enero de 1998, la querellada Milrod cerró la tienda que operaba en el centro comercial Humacao Plaza y en el mes de julio de 1998 también cerró la tienda que operaba cerca de la plaza de recreo del pueblo de Humacao.

12) El nombre de cada uno de los empleados contratados por la querellada Milrod para laborar a tiempo parcial en la tienda del centro comercial de Palma Real, la fecha en que comenzó a laborar, la fecha en que dejó de laborar y el horario de trabajo por semana, será sometido posteriormente y mediante moción conjunta de las partes.

13) Desde el 9 de noviembre de 1998 hasta el 14 de marzo de 1999, el querellante trabajó veinte (20) horas en cada una de las semanas comprendidas en este período. Durante las siguientes semanas, el querellante trabajó veinticinco (25) horas en cada una de estas semanas: 15 al 21 de marzo; 22 al 28 de marzo; 11 al 18 de abril; 19 al 25 de abril; 26 de abril al 2 de mayo; 10 al 16 de mayo; 17 al 23 de mayo; 24 al 30 de mayo; 31 de mayo al 6 de junio; 7 al 13 de junio; 28 de junio al 4 de julio; 5 al 11 de julio; 12 al 18 de julio; 19 al 25 de julio; 26 de julio al 1 de agosto; 23 al 29 de agosto; 30 de agosto al 5 de septiembre; 6 al 12 de septiembre; 13 al 19 de septiembre; 4 al 10 de octubre; 11 al 17 de octubre; 18 al 24 de octubre; 25 al 31 de octubre; 8 al 14 de noviembre; 15 al 21 de noviembre y 22 al 28 de noviembre; 29 de noviembre al 5 de diciembre; 6 al 12 de diciembre. De igual forma, durante las semanas del 3 al 9 de mayo de 1999, el querellante trabajó 36 horas; la semana del 14 al 20 de junio trabajó 26 horas; del 29 de marzo al 4 de abril trabajó 20 horas, pero esta semana incluía un día libre el viernes 2 de abril que fue Viernes Santo; la semana del 20 al 26 de septiembre de 1999 trabajó 28 horas; la semana del 27 de septiembre al 3 de octubre trabajó 28 horas y durante la semana del 1 al 7 de noviembre trabajó 28 horas.

14) Sin notificárselo o informárselo a la parte querellada y sin haber renunciado como empleado de la parte querellada, el querellante gestionó y obtuvo un empleo a tiempo completo con la firma Sedeco Discount, Inc. y comenzó a laborar para dicha firma el 13 de diciembre de 1999 y su horario de trabajo es de 9:00 a.m. a 
*834
5:00 p.m.

15) Del 13 al 19 de diciembre de 1999, la parte querellante no asistió a trabajar con la parte querellada, ya que estaba trabajando a tiempo completo con su nuevo patrono Sedeco Discount, Inc.

16) Posteriormente, la parte querellante se comunica con la gerente de la tienda propiedad de la querellada y le informa lo relativo a su nuevo empleo a tiempo completo con la firma Sedeco Discount, Inc. También, el querellante le solicitó a la gerente que le asignara horas de trabajo en la tienda de Palma Real de la querellada siempre y cuando fuera a partir de las 5:30 p.m.

17) Durante las siguientes semanas, el querellante laboró para la querellada en turnos que comenzaban a las 5:30 p.m.: a) 20 al 26 de diciembre de 1999 - 10.50 horas; b) 27 de diciembre de 1999 al 2 de enero de 2000 - 14 horas; c) 3 al 9 de enero de 2000 - 10.50 horas; d) 10 al 16 de enero de 2000 - 10.50 horas; e) 17 al 23 de enero de 2000 -10.50 horas; f) 24 al 30 de enero de 2000; g) 31 de enero al 6 de febrero de 2000 -10.50 horas en cada semana; i) 28 de febrero al 5 de marzo de 2000, 6 al 12, 13 al 19, 20 al 26 de marzo de 2000 - 10.50 horas cada semana; j) 27 de marzo al 2 de abril de 2000, 3 al 9, 10 al 16, 17 al 23 y 24 al 30 de abril de 2000-10.50 horas en cada semana; k) 1 al 7, 8 al 14, 15 al 21, 22 al 28 y 29 de mayo al 4 de junio de 2000 - 10. horas en cada semana; l) 5 al 11, 12 al 18, 19 al 25 y 26 de junio al 2 de julio de 2000 - 10.50 horas en cada semana; m) 3 al 9, 10 al 16, 17 al 23, 24 al 30 de julio de 2000 - 10.50 horas en cada semana; n) 31 de julio al 6 de agosto de 2000 -10.50 horas. ” (Apelación, Apéndice págs. 215-218)
En cuanto a la prueba documental y por estipulación de las partes, se admitió en evidencia la siguiente prueba documental:

“1) Tres libretas que contienen el “programa de control de horas de empleados regulares o part-time” y las cuales cubren el período del 9 de noviembre de 1998 al 1 de agosto de 1999;

2) Una carta de la querellada fechada 4 de noviembre de 1998 dirigida al querellante en la cual se le informó que la tienda para la cual trabajaba en el Centro Comercial Palma Real había tenido una mema sustancial en ventas y que por tal razón la querellada había decidido transferirlo como empleado a tiempo completo a la tienda del Centro Comercial Caguas Centro donde devengaría más ingresos debido a mayores comisiones por ventas, ya que el volumen de ventas de la tienda Caguas Centro es mucho más grande que el volumen de ventas de la tienda Palma Real y, finalmente, también se le informaba al querellante que de no aceptar el traslado de Humacao a Caguas podría permanecer en la tienda de Palma Real, pero con una jornada de trabajo reducida a 20 horas a la semana y;

3) Una certificación emitida por la firma Sedeco Discount, Inc., suscrita el 30 de agosto de 2001 por su Vicepresidente bajo affidavit número 4695 del notario Augusto A. Cirino Chinea, acreditando que el querellante es un empleado a tiempo regular de la referida empresa desde el 13 de diciembre de 1999. ”

En 16 de abril de 2001, Milrod solicitó la desestimación parcial de la querella, a lo que el foro apelado ordenó y notificó que dicha solicitud se resolvería en la vista en su fondo. (Apelación, Apéndice págs. 177-181 y 182, respectivamente)
La vista en su fondo tuvo lugar el día 10 de mayo de 2002. La prueba testifical presentada por el querellante, consistió en el testimonio de éste mismo. Por su parte, Milrod presentó como testigos a la Sra. Sonia Cruz, "acting manager" de la tienda en el centro comercial Palma Real, donde laboraba Sánchez; la Sra. Ada G. Díaz, quien se desempeñaba como gerente en tienda del centro comercial Caguas Centro para el mes de noviembre de 1998; y el Sr. Julio Wiscovitch, quien laboraba como Supervisor para Milrod.
*835 Terminada la vista, el Tribunal de Primera Instancia solicitó a ambas partes la presentación de Memorandos de Derecho en tomo a la controversia planteada. Milrod presentó su memorando en 18 de junio de 2002 y Sánchez presentó el suyo 1 día 26 de junio de 2002.
Avalada la prueba presentada y analizados los memorandos de las partes, en 29 de agosto de 2002, el Tribunal de Primera Instancia dictó sentencia, notificada a las partes en 9 de septiembre del mismo afio, desestimando la querella presentada por Sánchez.
Surgen de la sentencia apelada y conforme el testimonio de Sánchez, los siguientes hechos, los cuales hacemos formar parte de la presente sentencia: 
“ Que para la fecha de la vista, el querellante contaba con cuarenta y siete (47) años de edad, casado y con dos hijas, una de veintidós (22) años y otra de catorce (14) años de edad, que aún residían con él y su esposa.

Comenzó a laborar con Milrod en el 1978 en calidad de vendedor en la tienda localizada en la Plaza de Recreo de Humacao.

En su contrato de empleo con Milrod, se dispuso que podría asignar a trabajar en cualquiera de las tiendas que operaba la querellada. (Tr. Págs. 25-26)

Luego de varios años, Milrod transfirió a Sánchez a la tienda que operaba en el Centro Comercial Humacao Plaza.

Para el año 1998, Milrod cerró la tienda ubicada en en Centro Comercial Humacao Plaza debido a problemas económicos, por lo que Sánchez fue transferido a la tienda que operaba en la Plaza de Recreo de Humacao.

Del mismo modo, para el mes de julio de 1998, Milrod cerró la tienda localizada en la Plaza de Recreo y Sánchez fue transferido a la tienda localizada en el Centro Comercial Palma Real en Humacao.

En la tienda de Palma Real, Sánchez se desempeñó como empleado a tiempo completo desde el mes de julio de 1998 al 8 de noviembre de 1998. Durante ese período de tiempo, la Sra. Sonia Cruz, testigo de Milrod, se desempeñaba como ‘acting manager’ de la referida tienda.

Para principios del mes de noviembre de 1998, Sánchez recibió una carta (Exhibit B por estipulación de las partes), en la cual se le notificó sobre su transferencia a la tienda localizada en el Centro Comercial de Caguas Centro, con una jornada de trabajo de cuarenta (40) horas, efectivo el lunes 9 de noviembre de 1998, debido a una merma sustancial en las ventas de la tienda de Palma Real. En adición, se le informó que en esta nueva localización devengaría mayores ingresos debido a que las comisiones por ventas incrementarían porque el volumen de ventas en dicha tienda era mayor al de la tienda de Palma Real. Además, se le indicó que, de no aceptar el traslado, podía permanecer en la tienda de Palma Real, pero que sajornada de trabajo sería reducida a veinte (20) horas semanales.

Sánchez optó por permanecer en la tienda de Palma Real.

Indicó que no tenía cómo transportarse a la tienda de Caguas Centro.

Sin embargo, en el contrainterrogatorio admitió que tenía vehículo, pero estaba en pésimas condiciones. (Tr. Págs. 33-35)

Que al recibir la carta antes mencionada, se sintió mal, no podía dormir, no comía, se sentía de mal humor todo 
*836
el tiempo, no sabía qué iba a hacer, se que iba rumbo a la deriba, tenía problemas con su esposa y con sus hijas. Sin embargo, no buscó tratamiento médico para dicha condición. (Tr. Págs. 46-47)

A mediados del mes de noviembre de 1998, Milrod contrató empleados a tiempo parcial para la época navideña.

Que durante el período del 9 de noviembre de 1998 al 14 de marzo de 1999, trabajó para Milrod un total de veinte (20) horas semanales; en otras semanas trabajó veinticinco (25) horas, en otras treinta y seis (36) y en otras veintiocho (28) horas.

Admitió además en el contrainterrogatorio que la semana del 13 al 19 de diciembre de 1999, se le habían asignado horas de trabajo y se ausentó de su empleo sin notificarle a su patrono que se ausentaría esa semana en período navideño, donde su asistencia era requerida. (Tr. Pág. 41)

Testificó que para el mes de mayo de 2000 comenzó a realizar gestiones en busca de un nuevo empleo y lo obtuvo en la empresa Sedeco Discount, Inc., en la tienda de Humacao con un horario regular de 9:00 a.m. a 5:00 p.m. y un promedio de cuarenta (40) horas a la semana.

No obstante, fue confrontado con una Certificación bajo juramento de la firma Sedeco Discount, Inc. que acredita que Sánchez había comenzado a trabajar a tiempo completo en horario regular de 9:00 a.m. a 5 p.m., desde el 13 de diciembre de 1999, a lo que éste admitió haber mentido en el directo. (Tr. Págs. 45-46)

Luego de haber comenzado a trabajar para Sedeco, le solicitó a la entonces gerente de la tienda de Palma Real, Sra. Ada G. Díaz, que le asignara horas de trabajo en horario nocturno, a lo que ésta accedió asignándole un promedio de diez (10) horas a la semana en horario de 6:00 p.m. a 8:00p.m.

Que a comienzos del mes de agosto de 2000, le notificó a la gerente de la tienda de Palma Real, Ada G. Díaz, que renunciaba a su empleo con Milrod porque se sentía cansado por los dos trabajos que tenía y porque no le daban más horas para trabajar en Almacenes Rodríguez. ” (Tr. Pág. 21)

Admitió además que ni su esposa ni su hija mayor manejaban vehículos de motor, por lo que era él quien llevaba a su hija mayor a su trabajo como enfermera en un hospital del pueblo de Humacao, llevaba a la escuela a su hija menor y la recogía, y dependían de su vehículo para realizar todas las gestiones cotidianas de la familia. El mismo vehículo que Sánchez adujo como razón para no aceptar el traslado a Caguas Centro. ” (Tr. Págs. 53-54)
Al concluir el testimonio del querellante, Milrod presentó moción de desestimación por la prueba desfilada debido a que, en cuanto a la causa de acción por despido sin justa causa, a éste se le había ofrecido un empleo con mejor remuneración en la tienda de Caguas Centro con una jornada de cuarenta (40) horas semanales. Por otro lado, en cuanto a la causa de acción por discrimen por razón de edad, que el término prescriptivo de esta causa de acción es de un año, y al tomar los dos eventos que podían considerarse, el primero en noviembre de 1998 cuando se le redujo la jornada de trabajo a veinte horas a la semana o entre noviembre de 1998 y diciembre de 1999 cuando se reclutaron empleados a tiempo parcial, estando Sánchez disponible para trabajar a tiempo completo, y habiéndose radicado la querella en febrero de 2001, la misma estaría prescrita. (Tr. Págs. 81-82)
Milrod comenzó su desfile de prueba con su primera testigo, la Sra. Sonia Cruz. De la sentencia apelada y conforme el testimonio de dicha testigo, surgen los siguientes hechos, los cuales hacemos formar parte de la presente sentencia:

“Entre el mes de julio de 1998 al 8 de noviembre de 1998, se desempeñaba a tiempo completo como ‘acting manager’ en la tienda del centro comercial Palma Real.

*837
El otro empleado a tiempo completo en dicha tienda lo era Sánchez.

El centro comercial Palma Real cuenta con un horario extendido de 9:00 a.m. a 9:00 p.m. de lunes a viernes, los sábados de 9:00 a.m. a 6:00p.m. y los domingos de 11:00 a.m. a 5:00 p.m.

Que Sánchez pretendía trabajar un horario de 9:00 a.m. a 6:00 p.m. y se negaba a trabajar los fines de semana, y esto provocó fricción y tirantez entre éste y la Sra. Cruz. 

Que esta fricción y tirantez provocaron una reducción en las ventas de la tienda. ”

Luego del testimonio de la Sra. Cruz, se presentó a la testigo Ada G. Díaz. De la sentencia apelada y conforme el testimonio de dicha testigo, surgen los siguientes hechos, los cuales hacemos formar parte de la presente sentencia:
“ Que para principios del mes de noviembre de 1998, se desempeñaba como gerente en la tienda del centro comercial Caguas Centro.

Fue trasladada a la tienda del centro comercial Palma Real en calidad de gerente debido a que las ventas de dicho establecimiento estaban mermando y porque existía un problema de fricción y tirantez entre la Sra. Cruz y el querellante. (Véase además, Tr. Págs. 94-95)

Que realizó unos ajustes en los horarios de trabajo de los empleados, rebajando la jomada de trabajo de los dos empleados a tiempo regular, o sea, la ‘acting manager’ y el querellante Sánchez, a veinte horas semanales, de unas cuarenta horas que tenían, debido a que ella se incorporaba a la nómina de la tienda con cuarenta horas semanales. (Tr. Pág. 96)

Declaró que la semana del 13 al 19 de diciembre de 1999, Sánchez se ausentó de su empleo sin autorización alguna. A su regreso, éste indicó que a partir del 13 de diciembre había conseguido un empleo a tiempo completo en Sedeco, en el mismo pueblo de Humacao. No obstante, la testigo no tomó acción disciplinaria alguna contra éste. (Tr. Pág. 96)

Que el querellante le solicitó horas de trabajo a partir de las 5:30 de la tarde, ya que tenía que trabajar en horario regular con Sedeco y podía reportarse a la tienda a trabajar desde las 5:30 de la tarde hasta las 9:00 de la noche.

Le asignó a Sánchez horas de trabajo, conforme a su solicitud.

Sánchez le indicó, para el mes de agosto de 2000, que se encontraba físicamente cansado por los dos trabajos; que próximamente su hija menor comenzaría las clases y él tendría que atenderla.

Testificó además que, en una ocasión, Sánchez le indicó que una vez terminaba de trabajar a las 9:00 de la noche, pasaba a recoger a su hija adulta, que es enfermera y él la esperaba hasta las 11:00 de la noche, hora 'en que ella salía de su trabajo.

El día 3 de agosto de 2000, Sánchez le indicó que no trabajaría más para la querellada, Milrod. ”

Luego del testimonio de la Sra. Díaz, se presentó al testigo Julio Wiscovitch. De la sentencia apelada y conforme el testimonio de dicho testigo, surgen los siguientes hechos, los cuales hacemos formar parte de la presente sentencia:
*838 “ El Sr. Wiscovitch trabaja para Almacenes Rodríguez en calidad de Supervisor del área de operaciones. (Tr. Pag. 132)

El cierre de dos de las tiendas de la querellada, la localizada en la Plaza de Recreo y la del centro comercial Humacao Plaza, se debió a las mermas sustanciales en las ventas.

Que la merma en las ventas se debía a que se había perdido el tráfico de clientes en el casco del pueblo, debido a que se habían movido al centro comercial y ello creó una zona desierta de clientes dentro del pueblo de Humacao. (Tr. Pág. 134)

Testificó sobre la merma en ventas que había atravesado la tienda en Palma Real, y como dicho suceso obligó a Milrod a hacer un cambio en el personal gerencial de dicha tienda.

Que a Sánchez se le brindó la alternativa de ser trasladado a la tienda del centro comercial Plaza Centro en Caguas.

Dicha tienda es la más cercana al lugar de residencia de Sánchez y su traslado hubiese reflejando un aumento en comisiones debido al alto volumen en ventas, que es de tres a cuatro veces mayor que la tienda localizada en Palma Real.

Testificó que una vez se implantó el cambio y reestructuración del personal de ventas, las ventas de la tienda incrementaron.”

Inconforme con el dictamen del Tribunal de Primera Instancia desestimando la causa de acción del querellante-apelante, Sánchez, en 9 de octubre de 2002, éste presenta su escrito de Apelación en el 'que señala al foro de instancia la comisión de los siguientes errores:

“Erró el Tribunal al determinar que la renuncia del querellante-apelante no constituyó un despido constructivo.

Erró el Tribunal al determinar que la causa de acción por discrimen por edad está prescrita.

Erró el Tribunal al determinar que las actuaciones de la querellada-apelada fueron justificadas debido a la merma en ventas.

Erró el Tribunal al determinar que, en la alternativa, de no estar prescrita la causa de acción, el querellante-apelante no fue discriminado. ”

Por su parte, la querellada y apelada, Milrod, presentó su Alegato en Oposición a Recurso de Apelación en 21 de agosto de 2003.
Al estar perfeccionado el recurso ante nuestra consideración, procedemos a resolver.
II. Derecho Aplicable y Análisis
i.
Alega el apelante en sus errores primero y tercero, que el foro sentenciador erró al determinar que la renuncia del querellante-apelante no constituyó un despido constructivo y que las actuaciones de Milrod fueron justificadas debido a la merma en ventas en las tiendas Almacenes Rodríguez, tratándose de un despido injustificado.
No le asiste la razón al querellante-apelante, o sea, actuó correctamente el foro de instancia al así resolver los *839 errores antes señalados como lo hizo. Veamos.
La Ley Número 80 del 30 de mayo de 1976 (en adelante Ley 80), 29 L.P.R.A. Sección 185 (a), et seq, concede a todo empleado que haya sido despedido sin justa causa el derecho a recibir una indemnización por dicho despido. Según el Artículo 2 de esa ley, el despido sin justa causa es aquél que es hecho por mero capricho del patrono o sin razón relacionada con el buen normal funcionamiento del establecimiento, Hon. Almodóvar Marchany v. GP Industries, Inc., _ D.P.R. _ (2001), 2001 J.T.S. 7, página 756.
No existe, sin embargo, una prohibición absoluta contra el despido de un empleado. Si existe justa causa, éste puede ser despedido. Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775 (1992).
El Artículo 2 de la referida ley enumera varias circunstancias en las que puede ser entendido que el despido de un empleado fue con justa causa. La justa causa para el despido ha sido definida como aquélla que "tiene su origen no ya en el libre arbitrio del patrono, sino en razón vinculada a la ordenada marcha y normal funcionamiento de la empresa", Srio. del Trabajo v. I.T.T., 108 D.P.R. 536, 543 (1979).
Entre las circunstancias enumeradas por el referido artículo como justa causa para el despido están las siguientes: (a) que el obrero siga un patrón de conducta impropia o desordenada; (b) la actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación a las normas de calidad del producto que se produce o maneja por el establecimiento; (c) violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento, siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado; (d) cierre total, temporero o parcial de las operaciones del establecimiento; (e) los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en servicios rendidos al público; (f) reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido, Jusino Figueroa v. Walgreens of San Patricio, Inc., _ D.P.R. _ (2001), 2001 J.T.S. 154, página 371; Hon. Almodóvar Marchany v. GP Industries, Inc., supra, páginas 755-756.
Sobre el particular, en la Guía Revisada Para la Interpretación y Aplicación de la Ley 80, supra, aprobada por el Departamento del Trabajo y Recursos Humanos el 30 de mayo de 1976, según enmendada, se establece lo siguiente:

“Esta serie de circunstancias y actos que pueden dar lugar al despido justificado de un trabajador tipifican las circunstancias que a juicio del legislador justifican el despido de un empleado y aunque no necesariamente agotan las situaciones que pueden constituir justa causa para el despido, definitivamente delinean el pensamiento y la preocupación del legislador de que la determinación de justa causa no incida, como bajo la Ley Núm. 50, en el arbitrio de los tribunales. La discreción de los administradores de la ley y de los tribunales en la determinación de lo que constituye causa debe necesariamente de partir de la especificación contenida en la ley y la discreción podrá ejercerse solamente en aquellos aspectos relativos a grados o matices, que por la misma naturaleza y limitaciones del proceso legislativo no son susceptibles de ser abarcados exhaustivamente por un estatuto. Muchos de los principios jurisprudenciales sentados bajo la Ley Núm. 50, continuarán vigentes sirviendo comofaros orientadores en la interpretación de la Ley Núm. 80.

Se observará que las circunstancias y actos que pueden dar lugar al despido justificada de un trabajador enumerados bajo los incisos (a), (b) y (c), son imputables al trabajador y los enumerados bajo los incisos (d), (e) y (f), son imputables al patrono y/o a la situación económica del negocio.

; Sj< * ‡ # *

*840
4. Cierre Total, Temporero o Parcial de las Operaciones del Establecimiento. ” (Enfasis Nuestro.)

La responsabilidad y obligaciones del patrono en caso del cierre de un establecimiento debe examinarse en [sic.] base a las circunstancias siguientes:

“a. Si el cierre es total y permanente.

b. Si el cierre es total y temporero.

c. Si el cierre es parcial y permanente.

d. Si el cierre es parcial y temporero.

c. Cierre parcial y permanente.” (Enfasis Nuestro)

El cierre parcial y permanente es aquel cierre en el que el patrono descontinúa permanentemente una parte de sus operaciones y por lo tanto sólo un parte de sus empleados se ven afectados por el mismo. Es ese caso, el patrono está obligado a retener preferentemente en su empleo a los trabajadores de las clasificaciones ocupacionales afectados por el cierre con más antigüedad en la empresa.

Si el patrono no observa la norma expuesta en el párrafo que precede y retiene a algunos trabajadores con menos antigüedad por sobre aquéllos con más antigüedad, tienen éstos derecho a reclamar de su patrono los remedios que le concede la Ley Núm. 80, sin que la justificación original para el despido le sirva como defensa.

6. Reducciones de empleo que hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.” (Enfasis Nuestro)
Bajo la Ley Núm. 50 la falta de trabajo y actividad en el establecimiento del patrono era una causa justificada para el despido (P.R. Cap Tires v. Tribunal, supra). Igualmente bajo esa ley, una baja pronunciada en la producción de un establecimiento o la reducción de ventas o ganancias era, presumiblemente, causa justificada de despido, como lo es por disposición expresa bajo la Ley Núm. 80.
Cualquier baja en producción, o en ventas y/o ganancias, sin embargo, no justifica el despido. Tal reducción real o prevista, debe ser significativa a tal grado como para amenazar la estabilidad y solvencia económica del negocio.
En esta caso, como en aquellos comprendidos bajo los incisos (d) y (e) del Artículo ya examinado, el patrono debe dar cumplimiento a las disposiciones sobre preferencia de retención y preferencia de reempleo antes examinadas.
A los efectos del reclutamiento preferente de empleados suspendidos o despedidos en razón de las causas dispuestas en los incisos (d), (e) y (f) del Artículo 2 de la Ley Núm. 80, el patrono tienen la obligación de tomar la iniciativa y notificar a tales empleados que tiene plazas disponibles para ellos. Una vez les notifique, debe concederles un período razonable de tiempo para integrarse al trabajo o para que notifiquen que están disponibles para trabajar. No puede el patrono depender de que el trabajador tome la iniciativa y comparezca a solicitar trabajo. Es conveniente, por tanto, que el patrono tenga la dirección postal y residencial de todos los trabajadores así suspendidos para la eventualidad de que surjan plazas que deba ofrecer a éstos. Es conveniente, además, que el patrono mantenga una lista de sus empleados por orden de antigüedad lo cual le facilitará dar cumplimiento a la *841 ley. El patrono tendrá siempre el peso de la prueba para sostener la justificación del despido bajo el Artículo 2 de la Ley Núm. 80. Las causales de despido justificado que se dispone en los incisos (d), (e) y (f) deben estar sostenidas, como regla general, por prueba documental, dado que los cambios tecnológicos, las reorganizaciones, los cambios en el diseño y la reducción de ventas o en producción quedan reflejados en récords y en estudios técnicos y de contabilidad, de los cuales puede comprobarse la necesidad y conveniencia de tales cambios.
ii.
Tal y como señalamos anteriormente, Milrod realizó el cierre parcial y permanente de dos de sus tres localidades que operaban en el pueblo de Humacao, por mermas significativas en sus ventas. En cada uno de los establecimientos, trabajó Sánchez y tuvo que ser transferido a otra localidad como resultado de dichos cierres. Finalmente, fue trasladado a la tienda ubicada en el Centro Comercial Palma Real.
El referido establecimiento'comenzó a experimentar reducciones significativas en ventas desde julio de 1998 hasta comienzos de noviembre en el mismo año. Una de las razones para dicha merma, lo fue la mala relación de tirantez y fricción que se desarrolló entre Sánchez y la "acting manager", Sra. Sonia Cruz.
Ante dicha situación, Milrod decide realizar una reorganización del personal de la tienda de Palma Real y transfiere a la Sra. Ada Díaz en calidad de gerente. Esta situación ocurre durante el mes de noviembre de 1998.
Como parte del proceso de reorganización, provocado por la merma en ventas de la tienda de Palma Real, Sánchez fue transferido a tiempo completo a la tienda más cercana a su residencia localizada en el Centro Comercial Caguas Centro. No obstante, se le brindó la opción de permanecer en la tienda de Palma Real, pero su jomada de trabajo sería reducida a no menos de veinte horas semanales. Sánchez optó por mantener su empleo en Palma Real.
Tras comenzar a trabajar para la compañía Sedeco, durante diciembre de 1999, Sánchez abandonó su empleo durante la semana del 13 al 19 de diciembre sin notificación o excusa alguna y para el mes de agosto de 2000, el querellante renunció a su empleo con Milrod, alegadamente, porque no le asignaban más horas para laborar. No obstante, ya éste se encontraba laborando para otra compañía y según surge de su propio testimonio, Sánchez había solicitado horas de trabajo a partir de las 5:30 de la tarde, ya que tenía que trabajar en horario regular con Sedeco y podía reportarse a la tienda a trabajar desde las 5:30 de la tarde hasta las 9:00 de la noche.
La jurisprudencia ha reconocido que la renuncia del empleado motivada por actuaciones del patrono dirigidas a inducirlo o forzarlo a renunciar, se conoce como despido constructivo. Vélez de Reilova v. R. Palmer Bros. Inc., 94D.P.R. 175 (1967).
Aplicando los anteriores preceptos al caso que nos ocupa, concluimos al igual que lo hizo el foro de instancia, que en este caso no ocurrió un despido constructivo. La pmeba no controvertida refleja que Sánchez ya trabajaba en otro sitio, cuando decidió renunciar a la tienda de la querellada. La prueba incontrovertida, además, refleja que las actuaciones de la querellada-apelada fueron justificadas debido a la merma significativa en ventas.
Ante los hechos de este caso, es evidente que el Sr. Sánchez no logró establecer los elementos mínimos que configuren un despido injustificado bajo la Ley Núm. 80, supra. En esas circunstancias, resolvemos que el foro de instancia actuó correctamente al aplicar el derecho y no erró al declarar “No Ha Lugar” la querella presentada por éste. Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada.
iii
Por otro lado, sabido es que la Ley Núm. 100 de 3 de junio de 1959, según enmendada, prohíbe el discrimen por razón de edad, raza, color, religión, sexo, origen social, nacional o condición social en el empleo. 29 L.P.R.A. see. 146; Maldonado v. Banco Central, 138 D.P.R. 268 (1995); Santini v. Serv. Air, Inc., 137 D.P.R. 1 (1994); *842 Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990); García v. Shiley Caribbean, 122 D.P.R. 193 (1988); Odriozola v. S. Cosmetic Dist. Corp., 116 D.P.R. 485 (1985); Ibáñez v. Molinos de P.R., Inc., 114 D.P.R. 42, 50 (1983).
No cabe duda que la Ley Núm. 100 es una legislación protectora de empleados y solicitantes de empleo; tiene como propósito eliminar los discrímenes existentes en la relación obrero-patronal. Por tanto, sólo el empleado puede reclamar por discrimen bajo esta legislación. Sin embargo, a tono con el Art. 1802 del Código Civil, 31 L. P.R.A. see. 5141, bajo el supuesto de que la acción por discrimen del peticionario Rosario Cruz prosperara, no hay razón alguna para no compensar a su esposa Cruz Rodríguez por los daños que dicha conducta le ocasionó.
Ahora bien, el Artículo 3 de la Ley Núm. 100, supra, contiene una disposición específica en cuanto a la presunción de discrimen. Para que esa presunción se active, el empleado demandante tiene que probar tres elementos: (1) que hubo un despido u acción perjudicial; (2) que éste se realizó sin justa causa; (3) presentar evidencia indicativa de la modalidad del discrimen que se vincula al despido. En ese momento es que se activa la presunción de discrimen. Díaz Fontánez v. Wyndham Hotel Corp, supra, a la pág. 263; Belk Arce v. Martínez, supra. Sobre el particular, el Tribunal Supremo ha dicho que “si la parte demandante, durante el primer turno de prueba, no presenta evidencia suficiente para sostener sus alegaciones, la parte demandada no tiene que defenderse.” Díaz Fontánez v. Wyndham Hotel Corp., supra, a la pág. 263; (Enfasis en el original). Véase además Hernández v. Trans Oceanic Life Insurance, Opinión de 30 de junio de 2000, 2000 J.T.S. 125. No sería posible ni razonable exigirle al demandado que derrote una presunción sostenida solamente por una alegación. Díaz Fontánez v. Wyndham Hotel Corp., supra, a la pág. 264.
En Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740 (1981), el Tribunal Supremo expresamente resolvió que el término prescriptivo de las acciones bajo la Ley Núm. 100, supra, será el de un año.
Según indicáramos anteriormente, Sánchez presentó la querella en 20 de febrero de 2001. No obstante, los sucesos que podrían considerarse como discriminatorios por parte de Milrod contra el querellante Sánchez ocurrieron: Primero, en 9 de noviembre de 1998 cuando se le redujo su jomada de trabajo de una a tiempo completo a una a tiempo parcial o, Segundo, cuando en el período de 9 de noviembre de 1998, hasta diciembre de 1999, Milrod contrató a siete personas menores de treinta años para que realizaran tareas similares a las que él realizaba. Surge con meridiana claridad que la querella fue presentada a los dos años de ocurrir este segundo suceso alegadamente discriminatorio, o sea fuera del término prescriptivo de un año, por lo que la causa de acción por discrimen por razón de edad está prescrita.
iv.
En conclusión, hemos examinado la decisión apelada, a la luz de los argumentos planteados en el recurso, y no hallamos base para intervenir con la determinación impugnada. Un análisis del caso de marras, no revela que se haya actuado arbitraria o caprichosamente al emitir su determinación. Por lo tanto, no estamos en posición de intervenir con la apreciación que de la pmeba hiciera el Tribunal de Primera Instancia, quien pudo escuchar y ver a los testigos declarar. Tampoco detectamos ningún rasgo de prejuicio de parte del foro sentenciador.
Por los fundamentos antes expuestos, se CONFIRMA la sentencia apelada declarando sin lugar la querella presentada por el aquí apelante.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaría General
*843 ESCOLIOS 2004 DTA 25
1. Los hechos que surgen de la Transcripción presentada y no se hicieron formar parte de la sentencia apelada, se identificarán como Tr. Pág._.
2. No obstante, al preguntársele al Sr. Sánchez si existía alguna fricción entre éste y la Sra. Cruz, éste contestó en la negativa. (Tr. Pág. 49).