# 2007 DTA 96

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL XI**

JUDITH RAMÍREZ RODRÍGUEZ, *ET. ALS*
Demandantes

v.

NU/HART CLINICS, INC., NU/HART LASER CLINIC, P.R., INC.
Recurridos

Núm. KLAN-07-00374

San Juan, Puerto Rico, a 8 de agosto de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece la parte apelante, señora Judith Ramírez Rodríguez y solicita que revoquemos la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas (Hon. José A. Ramos Aponte, J.), el 7 de marzo de 2007 y archivada en autos copia de su notificación el 14 de marzo de 2007. En la misma, el Tribunal desestimó la demanda instada.

Revisado el recurso de apelación presentado por la parte apelante y la trascripción de los procedimientos en el caso, confirmamos la sentencia recurrida.

I

El 1 de mayo de 2006, la señora Judith Ramírez Rodríguez presentó junto a su esposo, el señor Francisco J. Massa Velázquez, una demanda contra Nu/Hart Clinics, Inc. y Nu/Hart Laser Clinic P.R., Inc. en la cual adujo las siguientes causas de acción: despido sin justa causa al amparo de la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P. R.A. sec. 185(a), difamación, despido en violación al periodo de reserva del Art. 5(a) de la Ley del Sistema de Compensaciones por Accidentes del Trabajo 11 L.P.R.A. sec.7, el pago de catorce (14) días por vacaciones, bono de navidad, el pago de salarios adeudados por trabajar durante el período destinado para tomar alimentos, y por último, los daños y perjuicios por angustias mentales y pérdidas económicas.

El 20 de junio de 2006, la parte apelante presentó una moción de anotación de rebeldía dado que la demandada no presentó una contestación oportuna. El 27 de junio de 2006, Nu/Hart Laser Clinic, Inc. presentó su oposición a la solicitud de anotación de rebeldía y sometió su contestación a la Demanda.

El Tribunal de Primera Instancia anotó la rebeldía en contra de Nu/Hart Laser Clinic P.R., Inc. mediante orden de 20 de junio de 2006. Esta solicitó una reconsideración de dicha determinación, la cual fue rechazada de plano por lo que acudió en revisión de la referida determinación al Tribunal de Apelaciones y el Tribunal Supremo. Ambos foros denegaron la expedición del auto de *certiorari* solicitado por la apelada.

Luego de varios trámites procesales, la vista en rebeldía se celebró el 13 de septiembre de 2006. La prueba

testifical consistió en el testimonio de la apelante, la señora Judith Ramírez. Se presentó, además, prueba documental.

Antes de celebrar la vista en su fondo, la apelante solicitó que se dictara sentencia parcial en rebeldía en cuanto al despido conforme a la Ley 80. La parte apelada se opuso. El Tribunal celebró la correspondiente vista al amparo de los pronunciamientos en *Continental v. Isleta Marina*, 106 D.P.R. 809, 815 (1978), e hizo las siguientes determinaciones de hechos, que por ser esencialmente correctas y atinadas a la controversia que nos toca resolver, las adoptamos. Incluiremos a continuación las determinaciones pertinentes para la resolución de este recurso:

"1. La Sra. Judith Ramírez Rodríguez es una enfermera graduada de profesión que comenzó a trabajar en Nu/ Hart Laser Clinic, P.R. Inc. el 19 de abril de 2004, a tiempo completo en calidad de enfermera graduada con un sueldo anual de $33,600.00 para un ingreso mensual de $2,800.00.

2. Nu/Hart Laser Clinic P.R., Inc. es una corporación dedicada a proveer servicios y tratamientos de belleza y estética corporal.

3. La carta de despido de la demandante, Exhibit 3, tiene fecha de 22 de agosto de 2005 y está dirigida a su dirección residencial según indica el cuerpo de la carta. En dicha carta, el patrono expuso que la demandante había abandonado el trabajo el 28 de julio de 2007, dejando a una paciente en medio de un procedimiento y que no se había reportado a trabajar sin traer sus excusas médicas luego de las tres semanas fuera. De hecho, según expone el exhibit presentado por la demandante, la compañía entendió que había renunciado. Se transcribe a continuación su contenido:

We regret to inform you that your employment with Nu/Hart Laser Clinics Puerto Rico has been terminated effective inmediately due to the following:

1) On Thursday, July 28, at 10:00 a.m. you abandoned a client in the middle of a procedure without notifying the client or your manager. As a result, the client kept waiting for you in the procedure room without notification.

2) You have not reported to work since then claiming to be sick. However, you have failed to produce a doctor's certificate to this effect despite two request by the Company. It was not until three weeks after your abandonment that you produced this documentation; by then, the company already understood that you voluntarily resigned your position.

3) Furthermore, you failed to report back from vacation on June 16 without notifying the Company.

4) Finally, you have repeatedly not completed the minimum number or hours requires during a typical pay period. (Enfasis suplido)

4) Este Tribunal, luego de escuchar, observar y evaluar el testimonio de la Sra. Judith Ramírez, determina que no merece credibilidad dada sus repetidas inconsistencias y contradicciones. Según declaró la Sra. Judith Ramírez, su último día de trabajo en la compañía fue precisamente el 28 de julio de 2005. La Sra. Judith Ramírez alegó durante su testimonio que ese día tuvo una crisis en el trabajo en la cual según sus palabras: "comencé a presentar síntomas de ansiedad, llanto repentino, colapsé en ese momento con coraje por ciertas situaciones que estaban pasando dentro del área de trabajo". Sin embargo, la parte demandante, fuera de esta sola aseveración, no presentó evidencia eficiente ninguna que explicase en qué consistió esa alegada crisis. Dicha expresión nos mereció poco o ningún valor probatorio y fue insuficiente. Además, la parte demandante no presentó evidencia pericial o de facultativo alguno sobre dicha crisis o "colapso sicosomático" según alegó en el párrafo veintiuno (21) de la Demanda.

5) La Sra. Judith Ramírez no acudió al Fondo del Seguro del Estado el 28 de julio de 2005, sino que dijo haber visitado un médico internista en Cayey, el Dr. Héctor A. Santos Rivera. La Sra. Ramírez indicó que inmediatamente después de visitar al médico envió una excusa médica a su supervisora Denisse Berdecía. Sin embargo, según indica la excusa médica sometida como Exhibit 8 ésta no tenía fecha de 28, sino de 29 de julio de 2005. De todas formas, no se sometió a este Tribunal evidencia eficiente alguna sobre el envío de dicha excusa a la compañía, ni para el 28 ni para el 29 de julio.

6) La demandante alegó haberse reunido el 5 de agosto de 2005 con la Sra. Kathy Smith, una de las oficiales de la compañía quien no habla español, para entregarle las excusas médicas que supuestamente preparó el internista, Dr. Santos. La demandante testificó que durante dicha reunión se comunicó con la Sra. Kathy Smith en el idioma inglés al momento que supuestamente entregó las excusas médicas. Sin embargo, a pesar que la demandante sostuvo que hablaba el idioma inglés, la demandante se negó a leer en voz alta su carta de despido la cual estaba escrita en dicho idioma. Por ello, este Tribunal no le mereció credibilidad su testimonio.

7) Según se desprende del Exhibit 5 y según testificó, la Sra. Ramírez acudió a la Corporación del Fondo del Seguro del Estado el 22 de agosto de 2005, veinticinco días después de su último día de trabajo. En el Fondo del Seguro del Estado ordenaron "descanso".

8) La Sra. Ramírez testificó que no visitó al Dr. Santos después del 22 de agosto de 2005. Sin embargo, las excusas médicas sometidas como Exhibit 8 indican que la Sra. Ramírez estaba alegadamente bajo el cuido del Dr. Santos Rivera hasta el 31 de agosto. Una vez confrontada con esto, la demandante rehusó contestar e indicó meramente que "desconocía" el porqué de esto. De hecho, su testimonio fue confuso e inconsistente en cuanto al alegado envío de sus excusas médicas a la compañía vía fax. Primero, indicó que le envió las excusas médicas por fax a la Sra. Dennisse Berdecía el 17 de agosto de 2005, cuando según surge de los Exhibits 6 y 7, dichos documentos iban dirigidos a la Sra. Kathy Smith. Segundo, testificó que envió todas las excusas contenidas en el Exhibit 8 ese 17 de agosto de 2006, lo cual no puede ser posible porque hay una excusa médica que indica que la Sra. Judith Ramírez había estado bajo el cuidado médico del Dr. Santos Rivera desde el 19 de agosto hasta el 31 de agosto, fecha evidentemente posterior. En virtud de este testimonio inconsistente y de un examen cuidadoso de las excusas médicas, las cuales todas están llenadas de forma idéntica, no nos merece credibilidad su testimonio las referidas excusas. Asimismo, el valor probatorio de las excusas médicas es poco o ninguno, toda vez que la demandante testificó no conocer la firma contenida en dichas excusas y el Dr. Santos Rivera no estuvo presente para testificar sobre las alegadas excusas médicas.

9) De hecho, los faxes presentados como Exhibits 6 y 7 confirman lo que el patrono afirma en la carta de despido en su acápite 2, que las excusas médicas fueron presentadas tres semanas después que la Sra. Judith Ramírez abandonó su trabajo el 28 de julio de 2005.

10) Además, el talonario de 4 de agosto a 16 de agosto de 2005, Exhibit 1 de la demandante, confirma la postura del patrono de que la demandante había abandonado su trabajo, pues no se le pagó su paga regular para esas fechas. Es decir, la demandante sabía que ella ya no trabajaba para la Compañía, que no se le consideraba empleada y que se entendía que había renunciado. Nótese que esto ocurre claramente antes del 22 de agosto de 2005 cuando la demandante acude al Fondo del Seguro del Estado.

11) La Sra. Ramírez testificó que según se desprendía del Exhibit 4, Hoja de envío de FedEx, su carta de despido que tenía fecha de 22 de agosto de 2005 y cuyo cuerpo tenía su dirección residencial, fue enviada el 31 de agosto a su dirección postal antes reseñada. Según se desprende de la Hoja de envío, la referida carta se envió desde la dirección Suite 240, 7 Parkway CTR/875 Greentree, R.D. Pittsburg, PA 152203701. Indicó la demandante que no había recibido ninguna carta de despido antes de esa enviada el 31 de agosto de 2005.

12) Durante su contrainterrogatorio, la representación legal de la demandada le mostró a la demandante una

*carta con matasellos del 22 de agosto de 2005 enviada de parte de la compañía desde la dirección Suite 240 7 Parkway CTR/875 Greentree, R.D. Pittsburg, PA 152203701 a la dirección residencial de la demandante. La demandante dijo no saber porqué no recibió dicha carta en su dirección residencial.*

*13) La demandante admitió que la dirección residencial puesta en esa carta mostrada con matasellos de 22 de agosto de 2005, era la misma dirección residencial que tenía el talonario de 4 de agosto a 16 de agosto que presentó como Exhibit 1.*

*14) Según consta en el Informe Patronal el cual forma parte del Exhibit 5 de la demandante, el patrono informó que no conocía de ningún accidente o condición desarrollada por la Sra. Judith Ramírez. (Nu/Hart Laser Clinic P.R. Inc. does not know of any injury or sickness developed by Judith Ramírez"). La compañía añadió en un addendum a dicho informe que la Sra. Judith Ramírez había abandonado el trabajo dejando desatendida una paciente en medio de un procedimiento. ("This employee was dismissed from her employment for abandoning the work premises leaving unattended a customer in middle of a procedure, as well as for other valid reasons".)*

*15) A pesar de que la Sra. Ramírez reclamó en su Demanda la falta de pago de catorce (14) días por concepto de vacaciones, la demandante admitió primero que sólo se le adeudaban únicamente (2) días. Luego de dicha admisión, la demandante reconoció también que en la carta de despido en su acápite (3) a ella se le indicó que tenía que regresar a trabajar de su período de vacaciones el 16 de junio y que ésta no cumplió en reportarse a trabajar ese día.*

*16) Durante la vista en rebeldía, la representación legal de la demandante desistió del pago de horas extras y del período de tomar alimentos por ésta ser una enfermera graduada, la cual está exenta.*

*17) En cuanto a su causa de acción por difamación, fue absoluta la carencia de evidencia admisible y eficiente por parte de la demandante para sostener ninguno de los elementos sobre difamación. Esto es que haya ocurrido una declaración falsa, que haya causado daños reales y que exista un nexo causal entre la alegada acción difamatoria y el daño. La demandante testificó además que estaba divorciada de su esposo para el momento en que abandonó su trabajo el 28 de julio de 2005."*

Finalmente, el Tribunal desestimó la demanda presentada. Expresó que no le mereció credibilidad el testimonio de la querellante y concluyó que no presentó evidencia eficiente que demostrara la condición de *"colapso sicosomático"* por la cual alegadamente abandonó su empleo el 28 de julio de 2005. Determinó, además, que la evidencia presentada, esto es el talonario de pago de 4 al 16 de agosto de 2005, demostró que la apelante conocía que ya no existía el vínculo obrero-patronal entre ésta y la Nu/Hart Laser Clinic, puesto que no se le pagó su salario regular. Por esta razón, entendió el Tribunal que la demandante no estaba cobijada bajo el período de reserva del Art. 5a de la Ley de Compensaciones por Accidente del Trabajo, pues la relación de empleo había terminado antes de reportarse al Fondo del Seguro de Estado el 22 de agosto de 2005.

El foro recurrido también desestimó la reclamación por concepto de pago vacaciones y la acción por difamación. En cuanto a esta última, el Tribunal expresó que fue absoluta la carencia de evidencia admisible y eficiente por parte de la demandante para sostener los elementos sobre dicha causa de acción.

Inconforme con dicho dictamen, la parte apelante acudió ante nos mediante recurso de apelación y señaló que erró el Honorable Tribunal de Primera Instancia al:

*"1. No dictar sentencia en rebeldía al amparo de la Ley 80 del 30 de mayo de 1976, existiendo alegaciones bien expresadas y fundamentadas cuando la parte querellada se encontraba en rebeldía.*

*2. Desestimar la demanda en relación al Artículo 5(a) de la Ley de Compensaciones por Accidentes del*

*Trabajo aduciendo que la demandante no estaba cobijada por la protección que brinda dicho artículo.*

*3. Desestimar la causa de acción por difamación al excluir prueba pertinente, determinando que era prueba de referencia el testimonio de la querellada respecto a las manifestaciones de calumnia hechas en su contra, por su supervisora de forma negligente, constando las mismas de personal y propio conocimiento.*

*4. Hacer referencia en la sentencia a una carta la cual no fue admitida como exhibit en evidencia.*

*5. No hacer determinación alguna respecto al pago del bono de Navidad, Licencia de Vacaciones, ni respecto a la responsabilidad de Nu/Hart Clinics, Inc. en la sentencia."*

## II
**A. Normas generales procesales y el procedimiento sumario al amparo de la Ley Núm. 2.**

El procedimiento judicial sumario establecido por la Ley Núm. 2, 32 L.P.R.A. sec. 3118 y siguientes, tiene como fin primordial el proveerle al obrero un mecanismo procesal acortado que facilite y aligere el trámite de sus reclamaciones laborales. El Tribunal Supremo en *Díaz v. Hotel Miramar Corp.*, 103 D.P.R. 314, (1975), pág. 324, expresó que aunque este procedimiento limita el uso de las reglas procesales y sitúa al patrono en una posición un poco más onerosa que la del obrero, el procedimiento sumario, no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones y prueba, hechos que avalen su derecho a lo reclamado.

En relación a la sentencia en rebeldía que se dicta al amparo del procedimiento sumario de la Ley Núm. 2, el Tribunal reconoció en *Díaz, supra,* que las disposiciones y normas interpretativas de la Regla 45 de Procedimiento Civil serán aplicables en todo aquello en que no estén en conflicto con disposiciones específicas de la Ley Núm. 2, o con el carácter sumario del procedimiento que allí se establece. Ley Núm. 2, Sec. 3, párrafo 2, *Díaz v. Hotel Miramar, supra,* pág. 321.

Se ha reiterado que la consecuencia jurídica de la anotación en rebeldía es que se admitan como ciertas todas y cada uno de los hechos correctamente alegados. *Supermercado Grande, Inc. v. Alamo Pérez,* 157 D.P.R. 867; *Colón v. Ramos,* 116 D.P.R. 258 (1985). Sin embargo, de conformidad con la Regla 45.2(b) de Procedimiento Civil, *ante,* y en relación con el descargo de los tribunales de su función adjudicativa en un pleito en rebeldía, ha señalado el Tribunal que *"el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba."* *Hernández v. Espinosa,* 145 D.P.R. 248, 272 (1998); esto es, si un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación, o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas. Véase *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 D.P.R. 563 (1997).

En *Continental Ins. Co. v. Isleta Marina,* 106 D.P.R. 809, 817 (1978), el Tribunal esbozó lo siguiente:

*"...los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía. Para el descargo de tan delicado ministerio, la ley reconoce que el proceso de formar conciencia judicial exige la comprobación "de cualquier aseveración" mediante prueba. A tal efecto, el tribunal "deberá celebrar las vistas que crea necesarias y adecuadas." Y con referencia a una parte demandada en rebeldía, que ha comparecido previamente, le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. No renuncia a las defensas de falta de jurisdicción ni de que la demanda no aduce hechos constitutivos de una causa de acción a favor del reclamante. En otras palabras, un trámite en rebeldía no garantiza per se, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho."* (Citas omitidas).

Por otro lado, en *Lucero Cuevas v. The San Juan Star Company*, 159 D.P.R. 494, se expresó que:

*...*"*[E]l procedimiento sumario no es, ni puede ser, una carta en blanco para la concesión de remedios". Si bien no se debe menoscabar el propósito reparador y protector que persigue la Ley, es menester recordar que resulta "esencial brindarle al patrono las oportunidades básicas del debido proceso de ley para defender sus derechos [adecuadamente]." Rivera Rivera v. Insular Wire Products, ante,* a la pág. 922, 140 D.P.R. 912, 921 (1996) (énfasis nuestro); *Hernández Hernández v. Espinosa,* 145 D.P.R. 248, 270 (1998).

## B. El derecho de reserva y reinstalación en el empleo del Artículo 5(a) de la Ley de Compensación por Accidentes del Trabajo

En *Santiago v. Kodak Caribbean,* 129 D.P.R. 763, el Tribunal Supremo esbozó con amplitud el alcance del Artículo 5a de la Ley de Compensación por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. Sec. 7. Allí expresó que dicho artículo establece dos tipos de protección para el obrero que sufre un accidente del trabajo y se reporta y acoge a los beneficios que ofrece la Ley de Compensaciones por Accidentes del Trabajo. Primero, le impone al patrono el deber de reservarle al obrero por doce (12) meses el empleo en que se desempeñaba al momento de ocurrir el accidente. En segundo lugar, el trabajador tiene derecho a que lo repongan en ese mismo empleo, una vez es dado de alta por el Fondo y solicita al patrono que lo repongan. Esto sujeto a que estén presentes las tres condiciones establecidas en dicho Artículo. ■

No obstante, la protección que ofrece este Artículo al obrero, según *Santiago vs. Kodak, supra,* no es absoluta. "*Puede darse el caso de que un patrono descubra que un trabajador que ha sufrido un accidente del trabajo llevó a cabo una conducta con anterioridad a sufrir dicho accidente que es causa justificada para despedirlo, y en este caso, el patrono obviamente no estaría obligado a reinstalar a su puesto a dicho trabajador, pudiéndolo despedir por esos actos anteriores y no estando impedido para ello por la prohibición de la ley. Lo que no puede hacer es despedirlo luego de sufrir el accidente o negarse a reinstalarlo en su empleo sin que haya justa causa para despedirlo.*" Delgado Zayas, Ruy, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño,* San Juan, Ramallo Bros. Printing, Inc., (1989), Cap. XI, pág. 189.

De igual forma, en *Santiago v. Kodak, supra,* el Tribunal concluyó, citando una opinión del Procurador del Trabajo emitida el 22 de septiembre que:

"*[l]a protección provista por el Artículo 5a de la Ley por Compensaciones por Accidentes del Trabajo supone, a nuestro juicio, que el empleado se acoja a los beneficios de la Ley, vigente el vínculo obrero-patronal. Ello lleva implícito el deber de informar el accidente antes de la ruptura o terminación de dicho vínculo. Es de notarse que el deber de la reserva de empleo supone la continuación y existencia de la relación obrero-patronal, al menos durante doce (12) meses consecutivos (360 días) a partir de la fecha del accidente. Consulta Núm. 13310.*"

## C. Regla general de exclusión de evidencia

La Regla 61, 32 L.P.R.A. Regla 61, dispone que: "*[s]alvo que por ley se disponga otra cosa, no será admisible prueba de referencia, sino de conformidad con lo dispuesto en este capítulo.*"

Esta norma general de exclusión de la prueba de referencia está fundada en razones de falta de confiabilidad. Su inadmisibilidad está atada a los riesgos inherentes que presenta relativos a la narración, percepción, recuerdo del acontecimiento y sinceridad del declarante, por lo que se impone la obligación de considerar esta evidencia con cautela. *Pueblo v. García Reyes,* 113 D.P.R. 843, 853 (1983).

El Profesor Chiesa señala en su libro sobre derecho probatorio que la razón que motiva la regla general de exclusión de prueba de referencia es la falta de confiabilidad de la misma y su dudoso valor probatorio, puesto que de ordinario una declaración que constituye prueba de referencia no tiene las garantías de confiabilidad que se produce mediante un testimonio en corte. Un testimonio en corte se hace bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador que ha de aquilatar su valor probatorio y está sujeta al contrainterrogatorio de las partes que tengan a bien hacerlo. E.L. Chiesa, *Tratado de Derecho Probatorio* (Reglas de Evidencia de Puerto Rico y Federales), República Dominicana, Pubs. J.T.S., Tomo II, págs. 616 y 617.

Sin embargo, la regla de exclusión no es absoluta. La ley contiene unas excepciones que se han establecido a base de razones circunstanciales que abonan a la confiabilidad o probabilidad de veracidad, así como por razones de necesidad. Reglas 62 a 66 de Evidencia.

## D. Evidencia erróneamente admitida

Por otro lado, la Regla 4 de las de Evidencia, 32 L.P.R.A. Regla 4, regula el efecto del error en la admisión de evidencia. Dicha regla señala que:

*"No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:*

*(1) La evidencia fue erróneamente admitida a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión, y*

*(2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita."*

La ley y la jurisprudencia han establecido que en nuestro ordenamiento jurídico rige la doctrina de que no procede la revocación de una sentencia o determinación a menos que pueda ser deducido que la admisión o exclusión de la evidencia impugnada fue un factor decisivo o sustancial en la sentencia o decisión cuya revocación es solicitada. Por tal razón, sólo los errores sustancialmente perjudiciales a la parte afectada conllevan la revocación de la sentencia a ser revisada, Reglas 4, 5 y 6 de Evidencia, 32 L.P.R.A. Apéndice IV; *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762, 786-787 (1991); *Pueblo v. Franceschini Sáez*, 110 D.P.R. 794, 799 (1981).

## III

Alega la parte apelante que erró el Tribunal al no dictar sentencia en rebeldía al amparo de la Ley 80, cuando existían alegaciones bien expresadas y fundamentadas y la parte querellada se encontraba en rebeldía. Se equivoca la parte apelante.

Si bien es cierto que cuando una parte se encuentra en rebeldía, la consecuencia jurídica, como regla general, es que se estimen aceptadas las materias bien alegadas en la demanda, esto no constituye una camisa de fuerza para los tribunales. En aras de alcanzar la justicia, la jurisprudencia ha sido clara al determinar que en el descargo de la función judicial, el tribunal deberá celebrar las vistas que crea necesarias para comprobar cualquier alegación. Como bien ha dicho el Tribunal Supremo, un trámite en rebeldía no priva al Tribunal de evaluar si en virtud de los hechos alegados existe una causa de acción válida y tampoco garantiza, *per se*, una sentencia favorable al demandante.

En el caso ante nos, el Tribunal celebró una vista en rebeldía en la que, a su juicio, no se mostró evidencia que sustentara las alegaciones de la demanda. Revisado el expediente, consideramos que las determinaciones del foro de instancia están válidamente sustentadas y carecen de error, prejuicio o parcialidad, por lo que, entendemos, no se cometió el primer error señalado.

257

En su segundo señalamiento, alega el apelante que erró el Tribunal al desestimar la demanda en relación al Artículo 5(a) de la Ley de Compensaciones por Accidentes del Trabajo y al aducir que la demandante no estaba cobijada por la protección que brinda dicho artículo. Surge de la prueba presentada y creída por el tribunal, que la apelante abandonó su empleo el 28 de julio de 2005, y que no fue hasta el 22 de agosto que ésta se reportó ante el Fondo del Seguro del Estado. La parte demandante tampoco pudo probar que presentó ante su patrono certificados médicos antes del 17 de agosto de 2005. Por otro lado, la carta de despido enviada a la apelante corroboró que ante la percepción de Nu/Hart Laser Clinics, Inc., la apelante había abandonado y por tanto renunciado a su empleo el 28 de julio de 2007. Acogemos el razonamiento del foro de instancia en tanto concluye que la demandante no estaba cobijada bajo el período de reserva del Art. 5(a) de la Ley de Compensaciones por Accidentes, dado que la relación de empleo había terminado el 28 de julio de 2005, día en que abandonó el mismo, antes de haberse reportado ante el Fondo del Seguro del Estado el 22 de agosto de 2007.

Más aún, es importante señalar que, según lo arriba esbozado, la reserva del Art. 5(a) no es absoluta, sino que el patrono puede despedir un empleado por hechos anteriores a un accidente de trabajo, si media justa causa. Ciertamente, el no presentar excusa médica al patrono hasta tres semanas después del alegado incidente de "*colapso sicosomático*", constituye justa causa para despido por ser una omisión de gravedad que afecta el orden, eficiencia y funcionamiento de un negocio. *Secretario del Trabajo v. I.T.T.*, 108 D.P.R. 536, (1979). Además, se suma a esta justa causa las imputaciones hechas por el patrono en la carta de despido ofrecida en evidencia por la apelante, en la que se alega que ésta abandonó a una paciente en medio de un procedimiento estético, según el Tribunal, una falta grave y seria para la seguridad del paciente y de la compañía.

Siendo ello así, no cometió error el foro de instancia al determinar que el derecho de reserva del Artículo 5(a) de la Ley de Compensaciones por Accidentes no le aplica a la apelante.

Como tercer señalamiento, alegó el apelante que erró el tribunal al desestimar la causa de acción por difamación al excluir el testimonio de la querellada respecto a las manifestaciones de calumnia hechas en su contra, por constituir prueba de referencia.

Como quedó mencionado, la ley es clara al señalar que no será admisible prueba de referencia, salvo que por ley se disponga otra cosa. Esto, según la jurisprudencia, fundado en la falta de confiabilidad. Sin embargo, dicha regla de exclusión no es absoluta, ya que la ley contiene unas excepciones que abonan a la confiabilidad o probabilidad de veracidad, así como por razones de necesidad.

En el caso de autos, la pretensión de la parte demandante de testificar acerca de las expresiones de quien alegadamente la difamó, constituye a plenas luces, prueba de referencia. Analizada la trascripción de la prueba, es necesario concluir que no existe en el ordenamiento excepción alguna que permita la admisibilidad de dicha evidencia. Entre otras cosas, no se demostró la falta de disponibilidad de la declarante. Actuó correctamente el Tribunal al no admitir en evidencia el testimonio de la apelante sobre las alegadas manifestaciones calumniosas hechas en su contra. El mismo era inadmisible bajo el criterio de prueba de referencia.

Como cuarto señalamiento, adujo el apelante que erró el tribunal al hacer referencia en la sentencia a una carta la cual no fue admitida como exhibit en evidencia. Ello, aunque resulta improcedente en derecho no fue un factor decisivo o sustancial en la sentencia dictada, por lo que no amerita la revocación de la misma. Conforme al expediente ante nos y la Regla 4 de las de Evidencia, *supra*, no procede dejar sin efecto ni revocar la sentencia por motivo de la comisión de este error.

Como último señalamiento, el demandante alegó que erró el Tribunal al no hacer determinación alguna respecto al pago del bono de Navidad, Licencia de Vacaciones, ni respecto a la responsabilidad de Nu/Hart Clinics, Inc. en la sentencia.

En cuanto al bono de navidad, lo único que surge de la transcripción es el testimonio de la apelante de que en el 2005 no recibió bono de navidad y que en años anteriores sí lo había recibido. El Tribunal de Instancia expresó reiteradamente en su sentencia que el testimonio de la apelante no le mereció credibilidad. Siendo ello así, es menester concluir que si el foro recurrido no dispuso sobre ello fue que no le adjudicó credibilidad alguna a la declaración de la apelante. La norma jurídica de deferencia a los tribunales de instancia en asuntos que tratan sobre la crediblidad de testigos nos imponen el deber de no sustituir nuestro criterio por el de los tribunales de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. El error alegado no fue cometido.

En cuanto al pago de vacaciones, la apelante reclamó en su demanda el pago de 14 días. Luego, en el juicio, ésta testificó que según su contrato, tenía derecho a dos semanas de vacaciones por año, de las que había tomado cuatro días, por lo que de enero a julio de 2005, sólo le restaban, según su testimonio, 2 días. Por otro lado, como parte de la prueba de la parte demandante-apelante, se presentó un documento que expresaba que durante el año 2005 la apelante estuvo de vacaciones desde el 3 de junio hasta el 16 de junio y que había regresado tarde de sus vacaciones sin notificarle a la compañía. La incongruencia entre las alegaciones, la prueba presentada y el testimonio de la apelante fue lo que llevó al Tribunal determinar la improcedencia de la reclamación del pago de vacaciones.

Finalmente, nos resta discutir, el señalamiento de error en cuanto a que el Tribunal no hizo determinación respecto a la responsabilidad de Nu/Hart Clinics, Inc. en la sentencia. Aunque en efecto el Tribunal no hizo determinaciones sobre Nu/Hart Clinics, Inc. y a pesar de que surge del emplazamiento incluido que esta compañía fue emplazada por medio de la señora Elizabeth Sánchez, alegada agente residente de ambas entidades demandadas, es irrelevante el planteamiento de la apelante, toda vez que la determinación del Tribunal fue declarar sin lugar cada una de las reclamaciones de la demandante por falta de prueba y de credibilidad. En nada cambia la resolución del caso el que el Tribunal de Instancia hubiese mencionado en su sentencia a Nu/Hart Clinics, Inc. El Tribunal no hizo determinación de responsabilidad sobre ninguna de las dos entidades demandadas, porque no hubo prueba suficiente que sustentara las reclamaciones de la demandante.

Un examen de la transcripción de la prueba oral y de la sentencia apelada nos permite concluir que la determinación a la que arribó el TPI, encuentra apoyo en la prueba que tuvo ante su consideración. En el caso de autos, el foro sentenciador determinó no concederle credibilidad a la versión de los hechos presentada por la parte apelante. Este Tribunal no tiene elementos de juicio para sustituir dicha evaluación. Nuevamente, los tribunales apelativos deben respetar las determinaciones de hechos de los tribunales de instancia y no intervendrán con la apreciación de la prueba que éstos hagan, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. *Rolón v. Charlie Car Rental, Inc.*, 148 D.P.R. 420 (1999).

## IV

Por todo lo anterior, se confirma la sentencia del Tribunal de Primera Instancia.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones